James C. Medsker, Defendant in Error, v. James Swaney et. al., Plaintiffs in Error.

| 45 | 273 |
| 31a | 482 |
| 45 | 273 |
| 59a | 263 |

1. *Mortgages — Mortgagee may become purchaser, when.* — Where the mortgagor is privy to the sale of the mortgaged property, assents to the acquisition, of title by the mortgagee, and afterward concurs in it, and there is no suspicion of fraudulent practice, the mortgagee may become the purchaser at his. his own sale, and the mere fact that at the time of the purchase he stipulates. with the mortgagor for a re-acquisition of the property on repayment of the purchase money, will not, in the absence of proof showing an intention, to that effect, remit the parties to their original relation as mortgagor and mortgagee. In such case, the mortgagor could not, after slumbering in his rights for five years, enforce such stipulation in an action of ejectment.

2. *Fraud — Mortgage sale — Verbal agreement by mortgagee to reconvey — Effect of, as fraud in fact.* — Although in case of purchase by the mortgagee of mortgaged property, a mere verbal agreement by him to reconvey, or being reimbursed his advance, as a contract, would be invalid, as being within the statute of frauds; yet a refusal to convey within a year, or within a reasonable time, if that was the understanding, on being tendered his money, may be, in the absence of a satisfactory explanation, sufficient evidence of fraud in fact to set aside the conveyance and admit the mortgagor to his right of redemption.

### Error to First District Court.

*Trefren, Black & Sheffield,* and *Slairns,* for plaintiffs. in error.

I. McNees must show himself in a condition to demand a reconveyance of the property according to the terms of the agreement within a reasonable time. Five years is not within a reasonable time. (4 Seld. 219; McNew v. Booth, 42 Mo. 189; 8 Paige, 257; 14 Pick. 467; 4 Denio, 495; 1 Littell, 190–1; Mackelreth v. Fox, 1 Lead. Cas. in Eq. 150, and notes; 6 Hill, 219.)

II. A mortgagee may become the purchaser of the equity of redemption, with the assent of the mortgagor, at his own sale. The pleadings admit that Swaney purchased through Hayden, with the express assent of McNees and with his full knowledge and agreement thereto. The sale can not be set aside on that account. (Hendricks v. Robinson, 2 Johns. Ch. 283, 311; McNair v. Biddle, 8 Mo. 257; 7 Iowa, 60; 4 Blackf. 339.)

III. McNees having been present at the sale, instrumental in causing it to be made, assenting to the same, standing by and permitting the property to be improved and grow in value, is now estopped from denying its regularity. (5 Ala. 427; 2 Law Reg., new series, 730.)

*Gage & Ladd*, for defendant in error

I. The interest of McNees in the mortgaged property before the sale was an equity of redemption, and was not foreclosed by it. The sale was voidable, and properly set aside. The purchase by the mortgagee was fraudulent and void. (Thornton v. Irwin *et al.*, 43 Mo. 153; Fox v. Macreath, 2 Bro. C. C. 400; Davore v. Fanning, 2 Johns. Ch. 252; 1 Lead. Cas. in Eq. 92.)

II. The agreement between McNees and Swaney was at best an agreement to clog the equity of redemption made between mortgagor and mortgagee, and, as such, is void; and if the sale stands upon that agreement, the sale itself is void. (Perkins v. Drye, 3 Dana, 170; Clark v. Henry, 2 Conn. 327; Wharf v. Howell and Wife, 5 Binn. 399; Johnston v. Gray, 16 Serg. & R. 365; Jacques v. Miks, 7 Wend. 261.)

III. The notice of the sale was insufficient, and the sale liable to be set aside for that cause alone. (Beattie v. Butler, 21 Mo. 313.)

CURRIER, Judge, delivered the opinion of the court.

This is a petition in equity to set aside certain conveyances, and for permission to redeem. The suit was originally instituted by John C. McNees, who subsequently sold out his interest in the suit and cause of action to the present plaintiff, who was thereupon substituted in the place of the original plaintiff.

It appears from the record that McNees, on the 20th of June, 1860, mortgaged the disputed premises to the defendant, Swaney, to secure the payment of the former's promissory note of that date for $1,450, payable twelve months after date, with ten per cent. interest. The deed of mortgage clothed the mortgagee with a power of sale. Under this power, default having been made in the payment of the note, the mortgagee proceeded to advertise and sell the mortgaged premises. They were sold on the 27th day of May, 1862, and one Hayden became the purchaser thereof at the sum of $1,739 88, being the exact amount then due on said note. A deed was made to him accordingly in due form, and he, on the same day, re-deeded the premises to Swaney, the mortgagee. Hayden had no interest in the transaction, and paid nothing, but acted throughout as the agent of Swaney, or perhaps as the agent both of Swaney and McNees; for it had previously been agreed between these parties that, if the property did not sell for more than the mortgaged debt, Hayden should bid it in on Swaney's account, and he did so. Thus far there is no dispute about the facts.

The petition, which was filed May 2, 1868, some six years after said sale, is framed upon the theory that the sale, on the part of Swaney, was fraudulent in fact, and various allegations are made in support of that view.

The answer denies all fraud, and alleges that the sale was made, and the title vested in Swaney, with the full knowledge and consent of McNees; that the mortgage debt was thereby extinguished, and the title to the mortgaged property vested in Swaney absolutely, in accordance with the understanding and agreement of the parties. The plaintiff's replication admits the existence of the alleged understanding, but avers that the arrange-

ment included the further stipulation that Swaney should hold the property subject to redemption—that is, that he should reconvey to McNees on being reimbursed the amount of the mortgage debt.

The state of the plaintiff's pleadings is peculiar, but it is not necessary to enter into an examination of them, since upon the whole case, we are of the opinion that he fails to show adequate ground for equitable relief.

The theory upon which the petition was framed—namely: fraud in fact—is abandoned, and a recovery is now sought upon other grounds. It is insisted that the mortgagee could not purchase at his own sale, either directly or through a third party, however upright his conduct; and that if he could do so with the mortgagor's assent, still the stipulation for redemption, as set out in the replication, vitiated the whole transaction.

The general rule on this subject undoubtedly is that a trustee can not, as against his *cestui que trust*, acquire the title to the trust property at his own sale, whether acting directly or through the intervention of a third party; and a mortgagee, with a power of sale, is regarded as a trustee. But a mortgagee with such power is not only a trustee; he is also a *cestui que trust*, and his interest as such may absorb the whole estate. It is pledged to him for his protection, and his security might be greatly impaired or sacrificed at such sale, if he were not permitted, under any circumstances, to become a purchaser. It has been held, therefore, that where the mortgagor was privy to the sale, assented to it, and to the acquisition of title by the mortgagee, and concurred in that result after it was reached, and there was no suspicion of fraudulent practices, the mortgagee might purchase at his own sale. And why not? The mortgagor could at any time part with his equity and convey it to the mortgagee by a private sale and transfer. No substantial reason is perceived why the same results might not, and with equal propriety, be reached through the medium of a public sale under the mortgage, the mortgagor assenting thereto.

In Texas it has been held that a mortgagee, with a power of sale, may purchase at his own sale, through a third party, and

Medsker v. Swaney et al.

that such sale is not subject to impeachment in the absence of any proof of unfairness, attempt to stifle competition, or other fraudulent acts. (The Howards v. Davis, 6 Tex. 174.) It has also been decided in New York that a mortgagee, holding a power of attorney from the mortgagor, may sell and convey, through a third party, to himself, provided he acts therein with the knowledge and concurrence of the mortgagor. (Dobson v. Racy, 4 Seld. 216; and see Ives v. Ashley, 97 Mass. 198.) A mortgagee selling under a power of attorney, as in the case above cited, and a mortgagee acting under a power of sale incorporated in the mortgage, stand on the same footing. In the latter case, the mortgage deed itself is treated as a power of attorney. (1 Hill. on Mort. 129.)

In the case at bar, the mortgagor's consent to the transaction now sought to be overthrown, is admitted by the pleadings, and is abundantly shown by the proofs. But it is urged that while it is true that the mortgagor was present at the sale, and was fully conversant with all its circumstances and incidents, and gave his assent to all that was done, confirming the conveyance to the mortgagee, still it is also true that he at the same time stipulated with the mortgagee for a re-acquisition of the property, and that this stipulation remits the parties to their original relations as mortgagor and mortgagee.

The stipulation is not, in my opinion, necessarily attended with the consequences attempted to be attributed to it. The evidence makes it clear that no such result was intended or contemplated by the parties. The times were unpropitious, and McNees was in no condition to meet his liabilities. The mortgage debt was long past due, and it was arranged between the parties that a sale should be had, and that Swaney, through Hayden, should bid up the property to the amount of his claim, and that, if there was no better bid he should take the absolute title and give McNees an opportunity to re-acquire it, if the latter should be able to do so, and at the amount of Swaney's investment therein. In pursuance of this arrangement, the property was sold at the exact sum due Swaney, the mortgage canceled, and McNees' note surrendered to him as paid. This shows conclusively that the rela-

tion of debtor and creditor, mortgagor and mortgagee, was not intended to be continued; that the debt was to be regarded as extinguished, and that McNees, in the view of the parties was to re-acquire the property, if he did so at all, in the character of a purchaser, and not in the way of paying up an unextinguished and continuing indebtedness. McNees, indeed, testifies that the note was not given up; that he remembers nothing about the note; that he does not remember ever having given it. . This testimony, when compared with the allegations of the petition, is not calculated to inspire confidence in its reliability. That a note was given, and that it was surrendered as satisfied on the day of the sale, the evidence sufficiently shows.

There is a conflict in the evidence as to the time granted by the stipulation to McNees, in which he might repossess himself of the property. Swaney testifies that it was one year from the date of sale, and so the evidence preponderates, and so McNees, according to the testimony of a witness who appears reliable, stated the fact to be, although he testified differently in court, claiming that no time was named or limited. If that were so, then a reasonable time would be implied, and that period certainly elapsed long enough before these proceedings were commenced. The evidence shows that Swaney took possession of the property in a year, or thereabouts, after the sale, and that he has since made valuable improvements upon it—McNees, in the meanwhile, and for some five years, sleeping upon his alleged rights. In any view of the subject, he has waited too long to have his pretensions favorably considered at this late day.

Swaney's mere verbal agreement to convey, on being reimbursed his advances, as a contract, was doubtless invalid, as being within the statute of frauds. But a refusal to convey within the year, or within a reasonable time—if that was the understanding —on being tendered his money, would have been, in the absence of satisfactory explanation, irresistible evidence of fraud in fact in his management of the mortgage sale, and would, therefore, entitle the other party to relief on that ground. But no money has been tendered him at any time, so far as the evidence shows; but it appears that some twelve or fourteen months after the sale,

Swaney offered to convey the premises to McNees, on being reimbursed the amount of money he had invested therein. At that time it was doubtful whether the property could be sold for more than Swaney had paid for it, although it was regarded as intrinsically worth much more. There was then, as the evidence shows, no sale for such property in Kansas City, and that had been the condition of things for some time.

But it is further objected that the mortgage sale was invalid because of the supposed indefiniteness and insufficiency of the notice. The premises were advertised to be sold on Monday, the 27th day of May, 1862, but the sale took place on Tuesday, the 27th day of May—on the same day of the month stated in the notice, but on a different day of the week. It is sufficient to say, in answer to this objection, that McNees was cognizant of the whole matter; that he was present at the sale, assenting to it and to all that was done, and could not, therefore, have been deceived or misled by the inadvertence, and he is consequently not in a position to complain of it.

Our conclusion upon the whole case is this : that the transactions under review are tainted with no fraud or unfairness on the part of Swaney; that the surrender and cancellation of the note and mortgage, coupled with McNees' consent to, and participation in, the acts and transactions which led thereto, including the acquisition of title to the mortgaged premises, through the medium of the mortgage sale and subsequent conveyances, operated to extinguish alike the mortgage debt and the mortgagor's right of redemption; and that this result is not defeated by means of Swaney's stipulation to re-convey, within the time and upon the conditions stated, although a refusal by him to carry out this part of the arrangement, had such refusal appeared, might well be considered such evidence of fraud and circumvention as to warrant the setting aside of the conveyances and the admission of the mortgagor to the right of redemption.

These conclusions lead to a reversal of the judgment and the remanding of the cause. The other judges concur.