ROBINSON v. McCUNE *et al.*, *Appellants.*

Division Two, May 21, 1895.

| 128 | 577 |
|---|---|
| 145 | 367 |

1. **Practice:** PARTIES: REAL PLAINTIFF.    Where, in a suit to set aside a deed because made in fraud of creditors, it appears that the land in controversy was sold at a sheriff's sale and bought in by M., the execution plaintiff; that by his direction the sheriff's deed was subsequently made to R., who paid no consideration therefor; that R. afterward conveyed it without consideration to the present plaintiff, and that the pending litigation was carried on either in the name of M. or for his benefit, M. will be treated as the plaintiff on the record.

2. **Equity:** CONVEYANCE: WHEN NOT IN FRAUD OF CREDITORS.    In an action to annul a deed because made in fraud of creditors, the evidence showed that the grantor's title was clouded by a tax sale; that he was a nonresident and had no other property; that the grantee, as a consideration for the deed, agreed to pay the costs and expense of litigation necessary to quiet the title in himself and to sell the premises back to the grantor at any time within six months on repayment to him of said costs and expenses, the title to become absolute in him if not so repurchased.    It was also shown that the only claim being pressed against the grantor at the time of the transfer was one which his attorney assured him was barred by the statute of limitations. *Held,* that the deed was not fraudulent.

3. ———: FAILURE TO FIND FACTS: ERRONEOUS DECREE.    A decree reciting that a deed was given and recorded, and setting it aside, without any finding of facts as a basis for such action, is erroneous.

*Appeal from Pike Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED.

VOL. 128—37

*W. H. Morrow* for. appellants.

(1) The supreme court in equity cases will make findings of fact according to the weight of the evidence, and will determine the law of the case, not being bound by the findings of fact or the conclusions of law of the trial court. *Thompson v. Cohen,* 24 S. W. Rep. 1025. (2) Appleberry was a nonresident and penniless. His interest in the property which he claimed to own as remainder-man, and which is here in controversy, had been sold at a back tax sale. This created an outstanding adverse title—a title standing as much in the way of his creditors, if he had any, as in his way. He was. informed by counsel, upon investigation, that his title had not been legally divested, but that to overturn this outstanding adverse title litigation would be necessary. A plan was formulated by which this necessary litigation could be most easily and effectively carried on; this litigation, to test whether his or the outstanding adverse title were the better, was commenced, is still going on and is yet undetermined, and can in no sense be considered fraudulent as to creditors.

*Stuart Carkener* and *Elijah Robinson* for respondent.

(1) The evidence clearly shows that the purpose of Appleberry in the execution of the deed was to fraudulently prevent Mathews from collecting his debt, then just sued on, and that Tinsley was in the scheme; in other words, that the deed from Appleberry to Tinsley was the product of the actual fraud of the parties thereto, and so void. (2) The evidence also clearly shows that said deed was a conveyance to the sole use and benefit of the grantor, Appleberry, and contrived and made by the parties thereto with intent to hinder and de-

lay and defraud Appleberry's creditors and especially Mathews, and so void. R. S. 1889, sec. 5170. (3) Since Tinsley never in fact and unconditionally obligated himself to do anything, and admittedly paid no part of the $600 specified in the deed as the consideration therefor, it is to be considered as a voluntary conveyance and so, even if there were no actual intent to hinder, delay or defraud his creditors, yet, as Appleberry was in debt and this was all the property he had, the conveyance can not stand. *Patton v. Casey*, 57 Mo. 118. (4) On the theory now set up by defendant, that the deed was intended as a mortgage, it is plain that it was not the sole purpose to secure the fees of the attorney, etc., as now claimed by defendant, but there was likewise a plain purpose in this "mortgage" to secure a benefit to Appleberry, to wit: the ultimate return to him (without regard to the rights of creditors) of all that should remain of the property, its rents, etc., after paying the expense of fighting off creditors under cover of this deed, to do which was the sole work of Tinsley in his office of "trustee;" and on this ground the deed was properly declared void. *Schroeder v. Babbitt*, 108 Mo. 289; *Holmes v. Braidwood*, 82 Mo. 610; *Nicholson v. Golden*, 27 Mo. App. 132.

GANTT, P. J.—This is an appeal from a decree of the circuit court of Pike county divesting the heirs of Addison Tinsley, deceased, of title to lot 35, block 2, of Luce and McAlister's addition to the city of Louisiana, Missouri.

D. R. Appleberry, a resident of Boston, Massachusetts, was the owner in fee of said lot, subject to a life estate in his sister Mrs. Celina Rose, until March 16, 1888. Mrs. Rose died a short time prior to this last date. Appleberry had come to see her, and was in Louisiana when she died.

During the lifetime of Celina Rose, there was considerable litigation in regard to this property over actions brought to enforce the payment of back taxes, and consequent ejectment suits. Celina Rose, however, with the exception of one ouster which dispossessed her for a few days only, managed to hold possession of this property, and resided in it, up to the time of her death in March, 1888.

Appleberry remained for several days after her interment. In the meantime he took possession of the above premises, under his reversionary interest as the owner of the fee, and was informed of the litigation which had taken place in regard to the property during his sister's lifetime, and of rival claimants to its ownership and the right of possession, and, especially, of claim of title thereto by Mr. Tapley, who had bought the property at a tax sale against Edwin T. Mathews, who, several years previous to the above sale to Tapley, bought it at a tax sale against Celina Rose and D. R. Appleberry.

Finding the existence of the above facts, he consulted in reference to the matter with an attorney, W. H. Morrow, Esq., and was advised by him that, assuming the proceedings in the back tax suit against his sister and himself, and the enforcement of the judgment, had been in all respects regular, his title had been conveyed to the purchaser at that sale and he was further advised that litigation over the matter was inevitable if he proposed to assert his claim. Appleberry asserted his inability to pay attorneys either to investigate the matter or to carry on any litigation in regard to it, and proposed that if W. H. Morrow, as his attorney, would investigate the title for him and establish his right to the property he should receive his pay out of the property, otherwise he was to receive nothing. Under this agreement Morrow made an investigation

of the matter and advised him that, in view of certain defects in the proceedings to subject his title to sale for the back taxes that accrued during Celina Rose's lifetime, his reversionary interest was not affected, and that Mathews, who bought at that sale, did not acquire his (Appleberry's) interest, but that owing to the condition of the record title, resulting from the various sales that had been made of the property under tax judgments, it would require legal proceedings to straighten up and perfect his record title, which might involve him in protracted litigation.

After having been advised as above, and that, being a nonresident of the state, he would have to give bond for costs in any suits that might have to be brought, he proposed to sell the property to his attorney, who declined to buy, but suggested he might find someone else who would. Appleberry in a short time brought Addison Tinsley, who had been an old acquaintance of his many years before, into Morrow's office and proposed to sell the property to him; after the situation of the property was explained to Mr. Tinsley, he also declined to buy. After considering various plans, in view of the situation of the property, Appleberry's nonresidence and his inability to meet the expenses incident to the necessary litigation, it was determined, at Morrow's suggestion, that Appleberry should make an absolute deed of the property to Tinsley; that in consideration thereof, Tinsley was to pay Morrow's fees for services already rendered Appleberry and such services as he should thereafter render in any litigation connected with this property, and was also to pay all past due and future taxes, insurance, etc., and all costs and expenses of litigation, and that, if Appleberry should, at any time within six months after demand made therefor, repay to Tinsley such expenditures as he might make under the contract, and for his time,

etc., he should reconvey the property to Appleberry; that upon Appleberry's failure to do so, the conveyance from Appleberry to Tinsley was to become absolute.

After the foregoing arrangement for contesting the outstanding titles to the property adverse to the title of Appleberry, and especially the adverse claim of Mr. Tapley, acquired by purchase of Mathews' title at a tax sale, but before the agreement was reduced to writing, Appleberry was summoned to answer to a suit instituted against him in March, 1888, in the Louisiana court of common pleas, by Edwin T. Mathews as plaintiff, based upon an open account for goods and merchandise which Mathews alleged had been furnished by him to Celina Rose between the years 1870 and 1874, at Appleberry's request.

Appleberry submitted the matter to his attorney, W. H. Morrow, who, upon being informed of the fact that Appleberry had been a nonresident of the state since 1867, advised him that the claim was barred by limitation and that the suit could be successfully defended upon that ground alone, as there was no pretext he had done anything to waive the provisions of the statute. Appleberry also claimed that he did not owe Mathews a cent. The facts of the case were such that Appleberry's attorney, W. H. Morrow, assured him, and also Mr. Tinsley, that Mathews' claim could not be successfully maintained, and that he need not have any uneasiness on that score.

The institution of the above suit by Mathews against Appleberry had no effect to change the arrangement already made, as hereinbefore stated, except that Tinsley was to supply the means to defend this latter suit and also to pay the fees of Morrow for attending to it, and then, pursuant to the understanding thus had between Appleberry, Tinsley and Morrow, the deed from Appleberry to Tinsley, the contract between

Tinsley and Appleberry, and the contract between Tinsley and Morrow, were reduced to writing and all executed at the same time, and the possession of the premises was turned over by Appleberry to Tinsley, who ever after retained the same to the time of his death and transmitted the possession thereof to his heir, who now holds it, and is substituted for him in this proceeding.

Tinsley instituted against Tapley a suit to quiet title, and, under the order of the court made in that case, Tapley commenced his action of ejectment which is still pending and undetermined. In the meanwhile the suit instituted in the Louisiana court of common pleas by Edwin T. Mathews against D. R. Appleberry was determined in said court in favor of Mathews, a judgment having been rendered against Appleberry for upward of $700. Upon this judgment execution was issued and levied upon the property in dispute which was sold, *and bid in by Mathews*, May 18, 1891. No deed was made to the property till May, 1892, *when by direction of Mathews, the sheriff executed a deed therefor to Elijah Robinson, and on the first day of August, 1892, Elijah Robinson conveyed the premises by quitclaim deed to his brother, the plaintiff herein, Robt. L. Robinson, who instituted this suit August 5, 1892.*

The petition in the suit of *Mathews v. Appleberry* was in evidence. The written contract between Appleberry and Tinsley was also in evidence, and Mr. Morrow, attorney for Appleberry and defendants in this case, testified at length.

I. As this cause stands it must be treated as if Edwin T. Mathews was the plaintiff on the record, as it is very plain that the litigation in all its stages has been carried forward either in his name or for his benefit. It is clear that he was the purchaser under his own judgment, and that no consideration moved from Elijah

Robinson for the sheriff's deed and there is no evidence that Robert Robinson, who took by quitclaim a few days later, paid anything. The deed recites a consideration of one dollar and divers other good and valuable considerations, and does not appear to have been recorded. Mathews testified that he understood the equity was in him, subject to the claims of Messrs. Tapley and Judge Robinson, and he was asked to explain how Robert Robinson came to have a deed, and he could not account for it.

This suit is prosecuted on the theory that Appleberry conveyed his lot to Tinsley to hinder, delay and defraud Mathews. The only evidence that tended to show a motive for fraudulent conveyance of this property by Appleberry was the judgment of the circuit court based upon an account for groceries sold to Mrs. Celina Rose, a sister of said Appleberry, from 1870 to 1874. As to this account, the deposition of Mathews was taken in the case, upon which that judgment was obtained, and he testified that Appleberry lived in Boston at the time they were sold and had never lived in Missouri since that date. Indeed the petition itself in that case shows the claim was barred by the statute. *Mathews v. Appleberry*, 57 Mo. App. 615. Mr. Morrow testified that he advised both Tinsley and Appleberry that the claim was barred and that he anticipated no trouble whatever in defeating it. Moreover, Mr. Morrow testified that the purpose of the deed to Mr. Tinsley and the contemporaneous contract had all been agreed upon when Mathews commenced his suit.

Appleberry was a nonresident and penniless, save the interest he had in this real estate. His title in it was clouded if not divested by a tax sale. He was advised by his counsel that an attempt to assert his title to this lot was sure to result in litigation. The contract between Tinsley and Appleberry, read in the

light of these facts, was neither fraudulent in fact nor by operation of law. A successful termination in his favor would have made him better able to meet any lawful claim against him. It was not a fraud upon any creditor of his to attempt to remove any cloud from his title, nor was it fraudulent for him to secure those to whom in his necessity he was forced to appeal for aid.

As against anyone save a creditor whose debt was secured by a lien, he had the absolute right to sell or mortgage the lot in good faith for a valuable consideration. The deed to Tinsley, though absolute on its face, was, under the concurrent agreements, only a mortgage, and only to become in fact absolute upon the nonperformance by Appleberry of his contract of that date, and, under all the circumstances, was entirely consistent with honesty and fair dealing. Appleberry was a nonresident. He could give no security for costs. He was wholly without means to prosecute his claims to the lot itself. Tinsley was a resident and solvent, and if he assumed the risks of costs and became liable for fees he could justly demand to be secured. What the costs would be, the attorney's fees, repairs of the property, were uncertain, but as they were uncertain it is sufficient explanation under the facts of the case.

In the exercise of our jurisdiction we have reviewed all the evidence and have been unable to reach the conclusion that this deed was made to defraud creditors, and we are happily relieved of any conflict on this point with the circuit court. It is urged upon us by respondent that we ought to defer to the judgment of the circuit court, but this can not avail him in this case because the circuit court did not find these transactions were fraudulent. The decree is in these words:

"Now at this day come the parties herein by their

respective attorneys and this cause coming on to be heard, the parties, both plaintiff and defendant, declare themselves ready for trial before the court, and, after the introduction of the evidence and argument of counsel, said cause was duly submitted to the court; and the court doth find that heretofore, to wit, on the sixteenth day of March, A. D. 1888, one D. R. Appleberry, made and executed a general warranty deed to Addison Tinsley, the defendant herein, conveying to him the following described real estate, to wit:    Lot number thirty-five (35) in block number two (2), in Luce and McAlister's addition to the city of Louisiana, Pike county, Missouri, which said deed was filed for record on the nineteenth day of March, 1888, and which is recorded at page 154 of volume 80 of the deed records of Pike county, Missouri.    It is, therefore, ordered, adjudged and decreed that said deed from D. R. Appleberry to Addison Tinsley and purporting to convey to him said real estate, be, and the same is, hereby set aside and for naught held as though the same had never existed; it is further ordered, adjudged and decreed by the court that the said defendant, Addison Tinsley, be divested of all right, title and interest in and to said real estate, and that the same be vested in this plaintiff, Robert L. Robinson.    It is, therefore, considered and adjudged by the court that the plaintiff have and recover of the defendant all costs and charges, in and about this cause, laid out and expended, and may have execution therefor.''

It will be observed that the court does not find the issues generally for the plaintiff.    The only predicate for this decree is that the court finds that Appleberry made the deed to Mr. Tinsley, and it was duly recorded, and from this premise alone follows a decree setting aside the deed.

The circuit court is a court of general equity juris-

Robinson v. McCune.

diction, but there is nothing in the constitution of a court of equity which empowers it to arbitrarily set aside a deed simply because it was made. The code of 1849 required a finding of the facts to be made in all cases, whether at law or in equity, where a jury was waived. That provision was repealed in 1855, restoring the practice that existed prior to the code of 1849. While a court of general jurisdiction will be presumed to have jurisdiction of a cause, its decree should find certain ultimate facts which confer jurisdiction upon it, and when, as in this case, it bases its decree upon the finding of a fact upon which no court would be authorized to render the decree, it is manifestly erroneous.

In the absence of some finding that the deed from Appleberry to Tinsley was made to hinder and delay Appleberry's creditors, the only decree authorized by law was one dismissing the bill. This decree is a clear *non sequitur* from the premises found and assumed, and of itself constitutes sufficient error to reverse the cause.

It is not necessary to set forth the finding of all the subsidiary facts upon which a decree is found, this would lead to unnecessary prolixity, but, as already said, enough of the ultimate facts proved which are essential to support the decree should be stated, or a general finding of the issues for the party in whose favor the decree is rendered. Here the essential fact to be found was that Appleberry executed and delivered the deed sought to be set aside for the purpose of hindering and delaying his creditors and that Tinsley aided and assisted him to perpetrate the fraud. No such finding was made; neither was there a general finding of the issues for the plaintiff, and the decree can not stand. The judgment of the circuit court is reversed. BURGESS and SHERWOOD, JJ., concur.