DRANNEK REALTY COMPANY, a Corporation, Appellant, v. NATHAN FRANK, INC., a Corporation.—139 S. W. (2d) 926.

Division One, May 7, 1940.

*Luther Ely Smith* and *Luther Ely Smith, Jr.,* for appellant.

*Lashly, Lashly, Miller & Clifford, Jacob M. Lashly* and *Louis B. Sher* for respondent.

DOUGLAS, J.—This is an action for the balance due on three promissory notes originally secured by a deed of trust which had been foreclosed. The amount claimed, $32,840.13, is not in dispute. It is the deficiency or unpaid balance after crediting the notes with the net proceeds derived from the sale.

Plaintiff was the owner of a one-half city block of land in St. Louis on the north side of Chestnut Street extending from 19th Street to 20th Street. The land was vacant and unimproved. It was sold to defendant in September, 1927, for $200,000. The down payment was $25,000 cash and the balance was evidenced by notes due serially up to five years after the date of the sale, secured by a deed of trust on the land. Defendant failed to pay the two principal notes maturing on May 1 and November 1, 1932 for $25,000 and $50,000 respectively, and an interest note due on the latter date. It also defaulted in the payment of taxes. The property was foreclosed and plaintiff, the owner of the notes, bought in the property for $47,500, subject to liens for unpaid taxes.

The foreclosure sale was held in April, 1933. This suit was filed the following month. The principal defense pleaded by defendant was that it was unable to refinance its obligation because of the emergency existing in financial circles growing out of the business depression and, further, that the depression prevented competitive bidding at the sale of the property so that it was not sold at its true value. Defendant prayed that the cause be transferred to the equity side of the court and that the court credit the mortgage debt with the fair value of the premises. Evidence was introduced to show that the sum of $141,000 was the fair value. In its reply plaintiff offered to convey the property back to defendant upon payment of the balance due and reimbursement for the taxes paid.

The trial court found for defendant and dismissed plaintiff's action. In its memorandum the court found that because of the depression it would be inequitable to hold the price received at the foreclosure sale to be conclusive of defendant's liability. Plaintiff has appealed.

The evidence shows that respondent was one of the subsidiary corporations of the Frank estate. The Frank estate with its subsidiary and associate corporations owned a number of pieces of property. These properties were mortgaged. There were four or five pieces

which were large properties. The conclusion is evident that one of the business pursuits of the Frank estate and its subsidiary and associate corporations was the buying and holding of real estate. At the time respondent purchased the land it lay across the street from property which was later taken by the city for the creation of Aloe Plaza, a small park in front of Union Station. The land involved here then became part of the business property which faces the entrance to the station. The purchase of unimproved, non-income paying real estate, as in this case, may well have been for the purpose of speculation. Had times been good this purchase may have proven a highly profitable venture.

Respondent argues that a court of equity has inherent power, without the aid of a statute, to credit on the mortgage debt the fair value of the premises where the mortgagee has acquired the premises at a foreclosure sale at a grossly inadequate price under depressed economic conditions.

In support of this contention respondent relies on the following cases which grew out of the depression: Better Plan Building & Loan Assn. v. Holden, 114 N. J. Eq. 537, 169 Atl. 289 (1933; Court of Chancery, New Jersey); Union Joint Stock Land Bank v. Knox County, 20 Tenn. App. 273, 97 S. W. (2d) 842 (1936); Dry Dock Sav. Inst. v. Harriman Realty Corp., 150 Misc. 860, 270 N. Y. Supp. 428; 280 N. Y. Supp. 981 (1935; Sup. Ct. N. Y., Appellate Division); Stewart v. Eaton, 287 Mich. 466, 283 N. W. 651, l. c. 657 (1939); Suring State Bank v. Giese, 210 Wis. 489, 246 N. W. 556 (1933). The decisions in these cases are not apposite here either because the foreclosures involved were under decrees of courts of equity so that the relief asked was included within the power of the court to conduct its own sales or for the reason that special statutes gave the court power to grant such relief. One case turned on the ground of fraud and another on a jurisdictional question.

To invoke the aid of equity there must be fraud, unfair dealing or mistake in the trustee's sale. The fraud must be proved by proper evidence. Inadequacy of price may be considered in connection with other evidence but in the absence of fraud or unfair dealing it, in itself, is not usually a sufficient ground for setting aside a sale under a deed of trust. [Masonic Home of Mo. v. Windsor, 338 Mo. 877, 92 S. W. (2d) 713.] Where it is so gross and manifest as to shock the conscience of the court then it may become an evidence of fraud. [Holmes v. Fresh, 9 Mo. 201; McDonnell v. De Soto Savings & Bldg. Assn., 195 Mo. 250, 75 S. W. 438; House v. Clarke (Mo.), 187 S. W. 57; Judah v. Pitts, 333 Mo. 301, 62 S. W. (2d) 715.]

This court has heretofore considered the same contention now made by respondent in the case of Hewitt v. Price, 204 Mo. 31, 102 S. W. 647. That was a suit for the deficiency after a sale under an ordinary deed of trust. We held that a chancellor had no power to fix a fair

value on the land foreclosed and impose that amount as the purchase price, in order to fix the mortgagor's liability. Where the sale is fairly conducted the amount bid must stand. [See New York Store Merc. Co. v. Thurmond, 186 Mo. 410, 85 S. W. 336.] The Kansas City Court of Appeals has also considered the same argument and has held that so long as the sale stands the sum for which the property was sold was the basis for measuring the deficiency. [Reed v. Inness (Mo. App.), 102 S. W. (2d) 711.]

Where there is fraud or unfair dealing surrounding the sale, then the only course followed in this State is to set the sale aside *altogether*. [Stephenson v. Kilpatrick, 166 Mo. 252, 65 S. W. 773.] We have held that misfortune due to the monetary stringency of 1893 could not be made a source of equity jurisdiction. [Lipscomb v. New York Life Ins. Co., 138 Mo. 17, 39 S. W. 465.] We also decided that to foreclose during the depression was not a wrongful act. [Peterson v. Kansas City Life Ins. Co., 339 Mo. 700, 98 S. W. (2d) 770.]

The defaults of the respondent were the subject of much negotiation between the parties before the sale. The sale was fairly conducted. There were several bids. The price of $47,500 bid for the property was adequate, especially considering that the property was bought subject to liens for $45,528.32, making the cost to the appellant the total sum of $93,028.32. As purchaser it took the property subject to the liens. [Scott v. Shy, 53 Mo. 478.] The appellant has offered to return the property to respondent upon payment of the indebtedness. We find no evidence of fraud, misconduct or unfairness. In view of all the circumstances of this case, we hold that the respondent is not entitled to the aid of a court of equity. "However strongly our sympathies may be enlisted for the unfortunate victim of hard times, they cannot furnish a basis for equity jurisdiction, and such courts cannot and ought not to be made the instruments of speculation in the future values of property even for the benefit of the unfortunate." [Lipscomb v. New York Life Ins. Co., supra.] However we are conscious of the fact that under other circumstances a depression or a general financial collapse might well make a course of dealing unfair which under normal conditions would be fair.

Respondent argues that appellant has waived its right to assert a deficiency claim or is estopped from doing so.

It appears that beginning in April, 1932, there were conferences and correspondence, which continued up to the foreclosure, about respondent's defaults on the balance of the purchase price and taxes. The negotiations culminated in these letters.

Respondent wrote to appellant as follows:

"We have given continued and serious consideration to the subject, and find ourselves in no better position today, than when we last talked with you; to pay accrued taxes and interest.

"We appreciate profoundly your desire to continue title in us on the basis of our paying the taxes and interest, and regret beyond words that we find ourselves in the position not to accommodate your fair request.

"We would like to save you the cost and effort of foreclosing, and as previously stated will work with your worthy counsel, Mr. Luther Ely Smith for whom we have high esteem, in turning over Deed or any other papers he desires to facilitate transfer back to you.

"Holding ourselves in readiness to cooperate, and with personal regards from us all, beg to remain, etc."

To this appellant answered:

"We feel that, under all the conditions prevailing, it is much better for us to take title to the property by foreclosure, and are therefore taking the necessary steps.

"We regret very much that you feel you are unable to retain this piece of property, as we have endeavored to make it as easy as possible.

"We also thank you for your offer of cooperation in our regaining the title."

The president of appellant company did testify that at the time of this exchange of letters he personally had no intention of seeking a deficiency judgment. He was asked: "Q. When did the idea of having a deficiency claim against this maker company occur to you?" He answered: "Not until after the sale. We didn't know how much the property was going to be sold for." It is self-evident that a deficiency could not be established until after the sale. When the deficiency was established appellant's board of directors had this proceeding commenced.

A waiver is an intentional relinquishment of a known right. Nowhere in the correspondence do we find the subject of a deficiency judgment even mentioned. The evidence does not show that it was discussed by the parties. There was no assurance or agreement that a deficiency judgment would not be sought. A waiver must be shown by some positive act or by some positive inaction inconsistent with the right in question. Mere silence, unless it is deceptive as where one is under a duty to speak, will not constitute a waiver. We find no waiver in this case. Nor is appellant estopped to assert its claim for a deficiency. The evidence does not show any admission, statement or act which is inconsistent with the claim it has asserted. The respondent was not induced to take any position to its injury.

The defenses of waiver and estoppel cannot be sustained for the additional reason that they were not pleaded. They are affirmative defenses and must be specially pleaded. [Neville v. D'Oench, 327 Mo. 34, 34 S. W. (2d) 491.] This general rule is applicable here because no waiver or estoppel is disclosed in appellant's own evidence.

Appellant did not introduce in evidence the proof of publication of the notice of foreclosure. It did, however, show that the deed

of trust was foreclosed as provided by its terms which were in accordance with the statute. The evidence was sufficient to prove a valid sale.

In view of our rulings on the points discussed, it is unnecessary to consider the other matters presented.

The judgment dismissing plaintiff's petition is reversed and the cause remanded with directions to enter judgment as prayed. All concur.