MALONEY *et al.* v. WEBB *et al., Appellants.*

Division One, December 12, 1892.

1. **Deed of Trust:** PLACE OF SALE: COURTHOUSE DOOR. Deeds of trust given to secure notes provided that the sales thereunder should be made "at the courthouse door in the city of Carthage, Jasper county, Missouri," and they were advertised to take place there. The lower part of the building was used as a store, and the circuit court was held on the second floor and was in session when the sales occurred. The door to the courtroom was reached by an open stairway extending from the street to a platform in front of the door, over which there had been constructed a vestibule, with an opening at the head of the stairway looking down on the street, and at this opening the sale was made. *Held,* that the sale was made at the place required in the trust deed.

2. ———: SALE: HIGHEST BIDDER. Where land is sold under a deed of trust for cash, and the debtor bids the highest price therefor, which he is unable to pay, it is not error to sell to the next highest bidder.

3. ———: ———: INADEQUACY OF PRICE. A sale of land under a deed of trust will not be set aside on the sole ground that the price paid was only half its value.

*Appeal from Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED AND REMANDED.

*E. O. Brown* and *Karnes, Holmes. & Krauthoff* for appellants.

(1) The evidence did not warrant the action of the court in setting aside the trustee's sales on the ground that they were made in an improper place. The room used as the courthouse had only one entrance way, and at this door the sale was made. *Kane v. McCown*, 55 Mo. 181; *Hambright v. Brockman*, 59 Mo. 52; *Aldin v. Goldie*, 82 Ill. 581; *Davis v. Hess*, 103 Mo. 31; *Napton v. Hurt*, 70 Mo. 497; 2 Jones on Mortgages, secs. 1848, 1849. (2) The statement that Maloney would be permitted to take the land by paying the amount offered by him within a day or two (to adopt his version of the transaction) was a mere gratuity assented to by the other bidders, and did not in the least change the fact that Page and Aylor were in fact the highest and best bidders. (3) It is now conclusively settled that a married woman's mortgage of her real estate to secure her husband's debt, for which she had become surety, is valid and binding upon her. *Wilcox v. Todd*, 64 Mo. 388; *Hagerman v. Sutton*, 91 Mo. 519; *Ferguson v. Soden*, 19 S. W. Rep. 727. (4) Even if the estimates as to the value of the land sold given by the plaintiffs' witnesses should be accepted, the case would still be subject to the rule that mere inadequacy of price constitutes no ground for setting aside such a sale. *Landrum v. Bank*, 63 Mo. 48; *Kline v. Vogel*, 11 Mo. App. 211; *Million v. McRee*, 9 Mo. App. 344; 2 Jones on Mortgages [4 Ed.] sec. 1915.

*Thomas & Hackney* for respondents.

(1) The finding of the court that the trustee's sale did not take place at the courthouse door, and that it was not an open public sale as required by the terms of the several deeds of trust, is fully supported by the evidence. *Stoffel v. Schroeder*, 62 Mo. 147; *Good v. Comfort*, 39 Mo. 313; *Judge v. Booge*, 47 Mo. 549; *Roche v. Farnsworth*, 106 Mass. 509; *Smith v. Probin*, 4 Allen, 516; *Mathie v. Edwards*, 2 Coll. 465. (2) Maloney was the highest bidder for all of the property, and it was stricken off to him, and he was entitled to a reasonable time to procure the money to pay the bid, and the trustee was not authorized to strike off the property to another bidder. *Good v. Comfort*, 39 Mo. 313; *Judge v. Booge*, 47 Mo. 549. A public sale is a sale at public auction to the highest bidder. *Swope v. Avery*, 5 Ind. 213. (3) There was no error in charging the defendant E. T. Webb with the amount of the church note.

BRACE, J.—This is an action in the nature of a bill in equity by Marina Maloney and her husband, Thomas Maloney, in which the plaintiffs seek to set aside a sale made by W. S. Chinn, as trustee in three deeds of trust executed by the Maloneys, conveying certain real estate in Jasper county to him, to secure the payment of certain debts therein described of the said Thomas Maloney to the defendant E. T. Webb.

The decree of the circuit court was in favor of the plaintiffs, and the defendants appeal. The defendants are the trustee in the deeds of trust, the *cestui que trust*, and the purchasers at the sale, or those who stand in their shoes.

The substance of the plaintiffs' petition is: That plaintiffs are husband and wife; that on the seventh of

VOL. 112—37

April, 1884, the said Marina Maloney was seized in fee in her own right of certain real estate described in the petition; that on that day her husband, the said Thomas Maloney, executed to the defendant E. T. Webb his two promissory notes of that date, one for $1,100, due six months after date, with six per cent. interest, to be compounded annually, and a like note for $1,000, due in twelve months; that on that day, without other consideration, she joined with her said husband in a deed of trust to the said Chinn, conveying her said land to him to secure said notes; that at the same time she indorsed and delivered to said Webb "a note—her separate property—which she held against the First Methodist Church of Joplin, balance of principal and interest due thereon, at date of delivery, being $1,500, as collateral security for the said two promissory notes of the said Thomas Maloney to the said Webb, which [church note] the said Webb agreed to enforce against said church property and apply the proceeds on the said two Maloney notes, said church property being amply worth the face of said church note; that on the same day, to further secure the payment of said two Maloney notes, the said Thomas Maloney, his wife joining and relinquishing her dower, executed another deed of trust to said Chinn conveying certain other real estate described in the petition, of which he was seized in fee; that the said Maloney was not really indebted to the said Webb in the amount evidenced in said notes, for the reason that there was wrongfully included therein an indebtedness of Marina Maloney of $563, which had theretofore been fully paid by her, and $350 of usurious interest wrongfully charged by the said Webb; that afterwards on the twenty-fifth day of March, 1886, the said Marina Maloney having become indebted to the said Webb in the further sum of $866, the said Thomas Maloney

executed his other note therefor, due three months after date, and to secure the same the plaintiffs executed another deed of trust on all the above land to said Chinn, trustee; that afterwards, in 1887, the said Webb converted the said church note of $1,500 to his own use, entered satisfaction of the mortgage given to secure it, and without giving credit therefor, on said two Maloney notes first aforesaid, or for said sum of $563, erroneously embraced in the amount thereof, or for said sum of $350, usurious interest included therein, but intending to cheat and defraud plaintiffs, induced said Chinn to sell said real estate, which on the thirteenth day of September, 1887, said trustee attempted to do by a sale under said deeds of trust, at which the said real estate of Marina Maloney was sold to the said defendant Aylor for the sum of $1,600, and the said real estate of the said Thomas Maloney was sold to the said defendants Page, Luke and Whitsett for the sum of $805, and deeds to said purchasers therefor executed by said trustee;" that said trustee's sale was illegal, in that no legal and sufficient notice thereof was given by said trustee before sale day, and because the sale was not an open and fair sale in open market at the courthouse door, and because the said Webb, Aylor and D. M. Page conspired together to deter bidders from attendance at said sale, and because the said property was sacrificed at said sale for less than one-fourth of its face value at a forced sale, and because it was made for the whole amount of said notes, when but a small part thereof remained due and unpaid.

"Wherefore plaintiffs pray that said trustee's sale be set aside; that the amount remaining due on said three promissory notes be ascertained, and that plaintiffs be permitted to redeem on payment thereof."

The answer after admitting the execution of the

deeds of trust and the promissory notes, the sale by the trustee, which it is averred was made after due notice and in strict conformity to the deed of trust, and alleging that the church note given as collateral security was also sold after due notice, put in issue all the other material allegations of the petition.

The deeds of trust provided that the sales to be made thereunder should be made "at the courthouse door in the city of Carthage, Jasper county, Missouri," and the sale was so advertised to take place in accordance with the terms of the deeds of trust. The sufficiency of the notice was not questioned on the trial; there was no substantial evidence tending to impeach the consideration of the notes, or to show any conspiracy or effort to deter bidders, or that any bidders were deterred from the sale.

The court found that the three notes were executed, and the deeds of trust given to secure their payment, as stated in the pleadings; that the plaintiffs had never paid any part of the three notes given, and that the whole amount of principal and interest thereon was due at the date of the trustee's sale, September 13, 1887; that the sale was advertised by the trustee to be at the courthouse door in the city of Carthage in accordance with the power in the deeds of trust; that the sale was made by the trustee at the head of an outside stairway leading to the room used for a courtroom, and inside a small inclosure or watershed from which the door into the courtroom entered, and at the sale for some or all of the tracts of land plaintiff, Thomas Maloney, was the highest bidder, but being unable to pay his bids he was given a day or two to pay them—otherwise the same was to go to the persons making the bid next below him; that after this sale Webb offered the church note held as collateral by him, and sold it for $600 to James Duke; that there was then due on said

note $1,206.68, and that the church property mortgaged to secure it was worth $3,500, subject to a prior mortgage to the county amounting to $1,706.90. The court further found that there was due Webb on the day of sale $3,900.46; that the total amount for which the real estate and appurtenances sold was $2,740.

The contention of the plaintiffs on the trial was and is here, "that the sale was not made at the courthouse door; that it was not an open public sale of the property as provided and required by the several deeds of trust under which the pretended sale took place; and that it was not sold or stricken off to the highest bidder, and that in consequence thereof three hundred and thirty acres of valuable mining property was sold for a sum insufficient to pay the indebtedness secured thereby."

I. It appears from the evidence that, at the time the sale was made, the circuit court was held in the second story of the Porter building, on the corner of Third and Howard streets in the city of Carthage, and that the circuit court was in session. It is not contended that the building at which the sale was made was not the proper building for such sale, but that the sale was not made at the door of that building within the meaning of the deeds of trust.

The first story of the building was occupied as a storeroom, fronting on the street. The door of the courtroom was about the center of the second story on the south side of the building, and about eighteen feet above the ground; this door was reached by an open outside stairway between three and four feet wide, running from the street to a landing or platform in front of the door, over which had been erected a watershed or vestibule about seven by nine feet in dimension, inclosed on three sides, with an opening about the size of an ordinary doorway at the head of the stairway

looking down the same on the street, the whole sup-
ported from the ground by four-by-four-inch pine
studding.

At the opening to this vestibule or watershed the
sale was made, the trustee standing just inside the
vestibule near the opening and between it and the court-
room door, Webb, Maloney, the bidders, and others
standing around him in the shed or on the steps or
landing, while a number of people, such as are
usually to be found around a courthouse when the
circuit court is in session, were on the street in
front of the building, at the foot of the steps, and
passing up and down the stairway and through the
vestibule into and out of the courtroom. The sale
seems to have been made at the usual hour and con-
ducted in the usual manner of public sales at that
place.

The land was offered in different parcels. Maloney
bid upon each, and ran it up until the others would stop
bidding, and he would have the last bid at about $5
more than the preceding bid. Webb remarked to him
that this was a cash sale, to which he replied that if he
had a little time he would get the money. After wait-
ing a short time, his money not being forthcoming, it
was agreed all around, among the bidders and parties
in interest, that he should have one, two or three days
to raise the money, and if he failed the property should
go to the next highest bidders. He did fail to raise the
money, and the property was deeded as aforesaid to the
next highest bidders.

After the real estate was thus sold, the church
note was sold to the highest bidder for $600. Of this
intended sale, Maloney was formally notified, and Mrs.
Maloney had notice, for she says in her testimony that
she saw Mr. Webb about a week before the sale, and
requested him to save the note for her if possible, and

that he promised not to sell it until after the land was sold, and only in case the land did not bring enough to pay the mortgage. This note, however, only enters incidentally into this case, and need not be further considered, unless it becomes necessary to discuss the decree entered in the case.

The sheriff of the county testified that his sales were made sometimes at the bottom of the stairs, and at other times on the top of the platform at the opening, and sometimes on the steps between the two. It seems that the parties first assembled at the foot of the stairs, and there was some talk as to whether the sale should be cried there or up at the door of the courtroom. The plaintiff says he objected to their going upstairs, but, if he did, no one seems to have heard any such objection from him; he also testified that he had some fears as to the safety of the stairway and platform, but no other person seems to have entertained any such fears. He also testified that the vestibule was crowded, but it is evident that anyone who wanted to go in there, up the stairs or into the courtroom, could and did so go without difficulty, and there is no evidence tending to prove that any person who wanted to bid upon the land did not have opportunity to do so.

If there was anything secret, unfair, collusive or oppressive in this sale, the evidence fails to disclose it. It seems to have been the desire of all parties that Maloney should have the property, if he could raise the means to discharge the incumbrances upon it. He could not do so, and his property was sold. On the evidence we cannot say that the sale was not made at the place specified in the deed of trust; we cannot say that it was not a fair, open public sale within its meaning. That it was not formally stricken off to the highest bidder misled nobody,—was occasioned by the interposition of Maloney himself, on a plea for time to

make his bid good, and for his accommodatian. He is in no position to complain of this technical informality. To sanction such a claim would be to put it in the power of debtors to defeat all trustees' sales of their property, by the subterfuge of an unreliable bid. *Davis v. Hess*, 103 Mo. 31.

A great deal of evidence was introduced in regard to the value of the property, and the opinions of those familiar with it are so variant as to make it difficult to make a satisfactory estimate of its true value on the day of the sale. It seems that the property was in bad condition, that for some years Maloney had been prospecting and seeking to develop the mineral which it contained, and had expended thousands of dollars in the undertaking, which had proved unprofitable; in fact, he seems to have sunk in the enterprise whatever means he had, or could raise on the land, and, unfortunately, was at the end of his tether so far as raising further means to prosecute his enterprise was concerned, when the sale took place. Looking at this property as best we can through the eyes of the several witnesses who expressed opinions of its value at that time, on the day of the trial two and one-half years after the sale was made, we cannot place the value of the property sold at less than $10,000. The amount for which it sold, including incumbrances that would have to be discharged by the purchasers, was about $5,000.

The question remains, can we sanction the action of the circuit court in setting aside the sale for this inadequacy of price which seems to be the only substantial ground upon which the decree can rest? While sales made by a trustee, being a harsh mode of foreclosing the equity of redemption, have ever been watched by this court with a jealous eye, and a disposition not to sustain them unless conducted in all fairness

is manifested in all the decisions (*Good v. Comfort*, 39 Mo. 313; *Judge v. Booge*, 47 Mo. 544; *Vail v. Jacobs*, 62 Mo. 131; *Stoffel v. Schroeder*, 62 Mo. 147), yet no case can be found in which such a sale was set aside upon the sole ground that the price was inadequate. Nevertheless, it is strongly intimated in some of the opinions that this might be done where the inadequacy was so gross as to shock the moral sense. At forced sales, property is often sold for fifty per cent. of its true value. While this fact may be the source of regret, and enlist our sympathies for the one whose property is sacrificed, yet its occurrence is so frequent that it can hardly be said to be unexpected, much less to shock the moral sense. To set aside sales for such inadequacy would have a tendency to impair, if not destroy, the value of such securities, to seriously embarrass business operations, be productive of incalculable injury, and is without precedent.

Finding, therefore, no sufficient evidence in the record of this case to sustain the finding and decree of the circuit court, the judgment is reversed and the cause remanded. All concur.