Harlin v. Nation.

HARLIN v. NATION *et al., Appellants.*

Division One, December 22, 1894.

| 126 | 97 |
| 71a | 670 |
| 126 | 97 |
| 150 | 567 |
| 126 | 97 |
| 157 | 333 |
| 157 | 337 |

1. **Deed of Trust**: FORECLOSURE SALE: PRICE: FRAUD. The price of $100 for land worth $500, sold under a deed of trust, is not so grossly inadequate as to raise the inference of fraud.

2. ———: ———: TRUSTEE. A trustee in a deed of trust who advertises the property for sale according to the terms of the deed is not required to make efforts to procure bidders for the property nor to give the grantor personal notice of the sale.

3. ———: ———: ———. The fact that the trustee fails to inform himself as to the value of the property is immaterial, where it consists of one lot and can not be sold otherwise than as one parcel.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

REVERSED.

*Christian & Wind* for appellants.

(1) No sale has ever been set aside where the parties were on equal footing and the sale perfectly fair; mere inadequacy of consideration is not deemed a sufficient ground of relief of itself. *Morriso v. Philliber,* 30 Mo. 145; *Phillips v. Stewart,* 59 Mo. 491; *Maloney v. Webb,* 112 Mo. 575; *Million v. McRec,* 9 Mo. App. 344; *Klein v. Vogel,* 11 Mo. App. 211. (2) Even if the trustee had known that the property was being sold at twenty-five per cent. of its value, he was not required to continue the sale, unless requested so to do by Harlin. (3) The decree made no provision for the payment of the trustee for his services. If it was necessary to pay the $24.50 for the advertising, it was just as much so to pay the trustee for his time.

*P. J. Taaffe* and *James P. Maginn* for respondent.

(1) Sales under deeds of trust, being a harsh method of disposing of the equity of redemption, should be watched with jealous solicitude and overthrown, if not conducted in all fairness and integrity, and the trustee is bound to act *bona fide,* as he is also the trustee of the debtor, and he should adopt all reasonable modes of proceeding in order to render the sale beneficial to the debtor, and can not shelter himself under a bare literal compliance with the conditions imposed by the terms of the power. *Stoffel v. Schroeder,* 62 Mo. 149. Also *Vail v. Jacobs,* 62 Mo. 131, where Judge SHERWOOD uses this language: "Neither the law nor the parties intend that the trustee shall be a nose of wax, a mere figurehead, in the hands of the creditor and of the auctioneer. He is placed in a position to act fairly by all interested, and when he fails in his duty in this regard, the sales he makes will be set

aside on timely application." To the same effect is *Maloney v. Webb*, 112 Mo. 584, where the above cases are cited with approval. In this latter case it is said, (page 585): "Nevertheless it is strongly intimated in some of the opinions, that this might be done where the inadequacy was so gross as to shock the moral sense," it having previously been said that no case can be found in which the sale by a trustee was set aside upon the sole ground that the price was inadequate.

BLACK, P. J.—On the nineteenth of November, 1883, William Harlin conveyed a lot in the city of St. Louis to George W. Nation, in trust to secure three notes of that date made by Harlin and payable to David Nation, one for $100 due in one year and the others being semiannual interest notes of $4 each. Harlin paid these interest notes. The principal note was renewed by giving interest notes annually up to the fall of 1890. Harlin then made default in the payment of interest, and continued in default up to the twenty-sixth of December, 1891, at which date the trustee sold the property and David Nation became the purchaser at the price of $100. In February, 1892, Harlin brought this suit to set aside the trustee's sale and to redeem. The trial court gave a decree according to the prayer of the petition.

The petition is broad enough to admit the evidence hereinafter mentioned.

The witnesses placed the value of the lot at the date of the trustee's sale from $380 to $800. The reliable evidence, based on sales made in the same vicinity, shows that the lot had a value of $500, and we think this was its full, cash value.

Daniel B. Brennan negotiated the loan for Harlin and for Nation. He collected the interest notes up to the fall of 1890. At that time Harlin had made

default in paying the interest and asked for further time. Brennan says he then told Harlin he could not give him further time, to go and see Nation and make his arrangements with Nation, and that Harlin came back the next day and said he had made it all right with Nation. Brennan says he refused to have anything more to do with the matter, that he thereafter saw Harlin and Nation, but not in relation to these notes.

Harlin, the plaintiff, agrees with Brennan in this, that at the conversation had in the fall of 1890 Brennan said he would have nothing more to do with the notes, but he says he did not ask Brennan for further time. He says he then saw Nation and asked him for his interest note and Nation said Brennan had the notes. It seems Brennan did not always have the interest notes when he received the interest, but on such occasions gave Harlin a receipt and subsequently gave him the interest note or notes. According to Harlin's evidence he asked for one of these paid interest notes at the conversation had with Nation in 1890. He says he did not then ask Nation for further time; that he did not see Nation again until after the property had been sold; that he quit paying interest because it took all of his money to support his family, and that he did not offer to pay interest to Nation or to Brennan from 1890 to 1892.

With respect to the conversation held in 1890, David Nation says Harlin came to him at a shop where he was working and asked for an extension of time. He says he then told Harlin the note had been running long enough, that he must have his money, and if not paid he would sell the property. George Nation, the brother of David and trustee in the deed of trust, says he heard the conversation. His evidence is to the same effect as that of David. David testified further

that he did not see Harlin from that time until after the date of the trustee's sale.

The evidence as to the subsequent transactions is to the following effect:

The property was advertised for sale in a newspaper according to the requirements of the law and terms of the deed of trust, and was sold, as before stated, on the twenty-sixth of December, 1891. George Nation, the trustee, testified that he did not give Harlin personal notice of the sale; that he did not know Harlin; that he made no effort to secure bidders other than to advertise the property and offer the same at public sale at the proper time and place; that David was the only bidder, though persons were going in and out of the courthouse while he was selling the property; that he had never seen the property and did not know what it was worth, and that he did not know he had been made trustee, until his brother requested him to sell.

David Nation testified that he did not know what the property was worth at the date of the sale; that, up to that time, he had never seen it; that he mailed a postal card to Harlin, notifying him of the intended sale; that he supposed Harlin lived on the lot and the card was addressed to him at that place, and that he did not inquire of Brennan where Harlin lived. Harlin did not live on the lot, but Brennan knew where he resided.

Brennan testified that he did not know the property had been sold until a month or six weeks after the date of the trustee's sale; that, as soon as he heard of it, he caused two cards to be sent to Harlin, one dated the twenty-sixth of January 1892, asking Harlin to call, and the other dated the twenty-ninth of the same month, notifying Harlin that the property had been sold under the deed of trust. It seems he then had an

offer for the property, and this was one reason for sending the request to Harlin to call at his office.

Harlin's further testimony is difficult to understand, but seems to be to the following effect: He saw Brennan in 1892, which was after the date of the trustee's sale. Brennan told him to clear up the debt, and asked him if he had seen Nation, to which Harlin replied that he had not. Brennan then, in the presence of Harlin, wrote a note to Nation, requesting the latter to call at his (Brennan's) office. Harlan did not know at the time that the property had been sold, and it would seem Brennan had not yet heard of it. Harlin then borrowed some money, and offered to pay the debt, interest and costs, but Nation declined the offer.

The rule is well settled in this state that mere inadequacy of price is not sufficient to set aside a sale of the character here in question, unless so gross as to raise the inference of fraud or imposition. *Phillips v. Stewart*, 59 Mo. 491; *Railroad v. Brown*, 43 Mo. 294; *Judge v. Booge*, 47 Mo. 544; *Maloney v. Webb*, 112 Mo. 575. While this property sold for only $100 when it was worth $500 cash, still we can not say the price was so grossly inadequate as to raise the inference of fraud. No case which we have examined justifies any such conclusion. It is evident the decree of the trial court can not stand on any such ground, though the inadequacy of the price is a matter for consideration in connection with the other evidence.

The evidence is clear to the effect that the plaintiff was in default in the payment of interest in the fall of 1890. It shows to our entire satisfaction that Nation then told the plaintiff the interest and debt must be paid, and, if not paid, the property would be sold. With this admonition the plaintiff for more than a year paid no attention whatever to the matter, neither paying nor offering to pay the accrued interest. The prop-

erty was not sold for over a year after the date of the conversation last mentioned, and it can not be said Nation acted oppressively. Indeed, there is nothing in the case which shows, or tends to show, collusion, unfair dealing, or oppression on the part of David Nation.

If the sale should be set aside, it is because the trustee failed to perform some duty which he should have performed. ''A trustee, in exercising his duties and powers under a trust deed, is a trustee of the debtor, and he is bound to act in good faith, and adopt all reasonable modes of proceeding, in order to render the sale most beneficial to the debtor.'' *Chesley v. Chesley*, 49 Mo. 540. A literal compliance with the terms of the deed of trust will not support a sale under a deed of trust where there is unfairness on the part of the trustee in making it. *Cassady v. Wallace,* 102 Mo. 581.

To bring the case within these general principles, it is argued that the trustee made no effort to procure bidders otherwise than to advertise the property for sale; that he made no effort to give the plaintiff personal notice of the intended sale, and that he did not inform himself as to the value of the property.

The trustee advertised the property for sale according to the terms of the deed of trust, and it can not be said he was bound to go out and hunt up bidders, nor was he bound to look up the plaintiff and give him personal notice of the sale. Trustees in these deeds of trust have never been held to the performance of such duties, and to hold that they must look up bidders, as if acting in the capacity of real estate agents, and must give the debtor personal notice of the intended sale, would play havoc with such sales from one end of the state to the other.

We think the trustee should inform himself as to the value and situation of the property, so as to be able

to determine whether it should be sold in a lump or in parcels, and so as to enable him to determine the question whether the sale should be adjourned or not. But the property in this case consisted of one lot only and could not have been sold otherwise than as one parcel. All this appeared upon the face of the deed of trust itself. Nor can we say it was the duty of the trustee to adjourn this sale and give a new notice at the cost of $24 or $25. On the contrary we can say it was not his duty to do so. We can not, therefore, see that the failure of the trustee to inform himself as to the value of the lot cuts any figure in the case. Parties have the right under the law of this state to agree that the equity of redemption may be foreclosed by sale under these deeds of trust, and while the courts will watch such sales with a jealous eye, they must stand until some substantial reason is shown for setting them aside. It would be a pleasure to be able to sustain the decree rendered by the trial court, but, after a careful perusal of the entire record, we are unable to do so. To affirm the judgment in this case would set a precedent which, if followed, would unsettle many titles, and at the same time discredit such sales to the great detriment of creditors, debtors and purchasers. The judgment is reversed and the petition dismissed. All concur.