## C. P. MOSS v. EDWARD KING et al.; WILLIAM ALLBRITAIN, Executor, Etc., Appellant.

### Division One, May 30, 1908.

1. **DEED OF TRUST:** Redemption. When property covered by a deed of trust to secure a debt, is sold by the trustee in conformity with the terms of the deed and is bought in by the *cestui que trust*, it is subject to redemption by the grantor and his assigns, at any time within one year from the date of the sale, by payment of the debt and interest and all legal charges and costs incurred in making the sale, upon the giving of security, to the satisfaction of the circuit court or clerk, for the payment of the interest to accrue after sale, and for all damages and waste.

2. ————: ————: **Notice and Security: Reasonable Time.** Either the security required by the statute must be given on the day of the foreclosure sale, or notice must be given immediately upon the sale of an intention to give security and the security itself must be given within a reasonable time. Giving it within forty-two days is not giving it within a reasonable time. The reasonable time meant is time to accomplish that which the party could accomplish at once were it not for some particular condition hindering him, such as sickness or other adventitious circumstance. The time is not extended to permit him to experiment in the market in trying to sell the property for more than it brought at the sale, with the intention to let the purchaser thereat have it for his bid if the experiment should not succeed.

3. ———: ———: **Abandonment by Answer.** An allegation in the mortgagor's answer that within the time allowed by law for filing his redemption bond he had entered into an agreement with the purchasers at the foreclosure sale that if they would allow him until a certain date to dispose of the property and if he did not succeed he would thereafter allow them to take their deed from the trustee and would not exercise his right of filing a bond, is a clear abandonment of his purpose, if he ever had the purpose, to give the bond to redeem.

4. ———: ———: **Trustee: Trying to Find Better Buyer, Etc.** After the sale, the trustee is under no obligation to assist the mortgagor to organize a company to take the property at a better price, nor is he under any obligation to refrain from organizing a company to buy it from the purchasers at the foreclosure sale.

Appeal from Johnson Circuit Court.—*Hon. N. M. Bradley,* Judge.

AFFIRMED.

*Webster, Gilmer & Crowley* for appellant.

(1) The redemption bond filed by appellant was, under the facts in evidence, filed within a reasonable time, as prescribed by statute, and the court erred in decreeing it null and void. R. S. 1899, secs. 4343 and 4344; Ins. Co. v. Rogers, 155 Mo. 307; Sheridan v. Nation, 159 Mo. 27. (2) By reason of this suit and the decree therein, appellant has been deprived of the benefit of the statute giving him one year in which to redeem, and in equity and good conscience he should have as much time for redemption after the termination of this suit as if the same had not been brought.

*J. W. Suddath* for respondent.

(1) A mortgagor under a deed of trust is not entitled to redeem, as a matter of course, but only upon full compliance with the statute. Updike v. Elevator Co., 96 Mo. 160; Vanmeter v. Darrah, 115 Mo. 157; Keith v. Browning, 139 Mo. 196; Dawson v. Egger, 97 Mo. 36. (2) Forty-two days is not a reasonable time

in which to file a bond under the circumstances of this case, and gives the party no right to redeem. Vanmeter v. Darrah, 115 Mo. 157; Updike v. Elevator Co., 96 Mo. 160; Dawson v. Egger, 97 Mo. 36; Ins. Co. v. Rogers, 155 Mo. 307. (3) A trustee in a deed of trust becoming the owner of the note renders his position .that of a mortgagee with power of sale. Cassady v. Wallace, 102 Mo. 580; 26 Am. and Eng. Ency. Law (1 Ed.), 878. (4) A mortgagee with power of sale is not in any proper sense a trustee, because he stands at all times in the position of a creditor whose interests are adverse to those of the mortgagor; and when he executes the power, he does so solely for his own benefit, and not in a fiduciary capacity. 26 Am. and Eng. Ency. Law (1 Ed.), 879. (5) A mortgagee with power of sale, after the sale, is a trustee for the mortgagor only with respect to the balance of the purchase money, or surplus after sale, if there should be any. Warner v. Jacob, 20 Ch. Div. 220; Martin v. Clowes, 21 Ch. Div. 857. (6) There is no complaint here of any defect or lack of proper action in the conduct of the sale. Hence, the only question is, Did appellant have a right to file bond after date of contract of December 14, 1904? If so, was the bond filed in a reasonable time? Respondent claims not; the court found not. (7) Defendant's cross-bill, or cross-petition, in this case, states no facts that entitle him to any equitable relief, and the facts stated are wholly unsupported by the evidence. (8) While this court is not conclusively bound by the findings of fact by the lower court, yet it will defer greatly to its finding, especially where the evidence is oral, and the lower court had the opportunity to see and judge of the credibility of the witnesses, as here. Parker v. Roberts, 116 Mo. 667; Blount v. Spratt, 113 Mo. 54; Matuias v. O'Neill, 94 Mo. 530; McMurray v. McMurray, 180 Mo. 533.

VALLIANT, P. J.—Plaintiff, as assignee of the purchasers at a foreclosure sale, brings this suit to require the trustee to execute a deed conveying the land to him in accordance with the terms of the sale. The land in suit is a tract of about four or five acres, on which is situated a flour mill, in Johnson county. It was encumbered with a deed of trust to secure three notes aggregating $1,186 principal. Defendant Allbritain, as executor of the will of Harriett L. Jameson, deceased, was the owner of the equity of redemption; defendant King was the trustee in the deed of trust. This debt being due and unpaid, the trustee, after due notice, offered the property at public sale to the highest bidder for cash, in accordance with the terms of the deed of trust and it was struck off to A. W. Burke and B. B. MacMacken for the sum of $1,259.21, which was the highest bid.

The date of the trustee's sale was November 11, 1904. Immediately after the sale defendant Allbritain gave notice to the trustee and to Burke and MacMacken that he would give the bond and security allowed by the statute, sections 4343 and 4344, Revised Statutes 1899, to redeem the property within one year. After receiving that notice, King, the trustee, declined to give the purchasers a deed, but gave them a certificate declaring that he had sold them the property at the price named and would make them a deed unless the defendant Allbritain should within a reasonable time give the bond and security promised. So the matter stood on December 14th, when Allbritain, having not then given the bond, Burke and MacMacken had some talk with him about it, whereupon they came to an understanding or agreement which was evidenced in the form of a letter from Allbritain to Burke and Mac-Macken, dated December 14, 1904, the body of which was as follows: "Gentlemen: This is to witness that unless I succeed in selling or trading the Kingsville

Mill Property by December 25th, 1904, the title thereto will be conveyed to you either by Miss Bell, the present holder, or by Mr. Ed. King, the trustee in the deed of trust on said property. If I succeed in closing a deal in such way as to pay off your claim and need a reasonable time in which to consummate the deal I shall expect reasonable treatment on that line as heretofore talked."

On the next day, December 15th, Burke and Mac-Macken sold and transferred their interest evidenced by the certificate of purchase to the plaintiff Moss by a writing to that effect endorsed on the certificate. The consideration for this assignment was $1225 paid them in cash. The negotiations that resulted in this assignment were conducted by King acting for Moss. When Burke and MacMacken delivered the assigned certificate to King for Moss, they also delivered to him the letter above mentioned from Allbritain to them.

On December 23d, 1904, Allbritain executed a bond to redeem, as if in compliance with the statute above mentioned, and it was filed on that day in the office of the circuit clerk. After December 25th had passed, Moss demanded a deed from the trustee, but he declined to execute it because Allbritain had given the bond and insisted that he had the right to redeem within the year. Moss then brought this suit to compel the trustee to execute the deed.

The answer of Allbritain states that at the time of the foreclosure sale, Burke and MacMacken were the owners of the entire debt covered by the deed of trust; "that within the time allowed by law for filing said bond, this defendant and the said Burke and Mac-Macken entered into an oral agreement whereby this defendant agreed that if said Burke and MacMacken would allow him until the 25th day of December, 1904, in which to dispose of said property, or to get the same into contract for its disposition, he would allow them to

take their deed from the trustee and not exercise his right of filing said bond in the event he should fail to dispose of said property or make a contract for the disposal thereof within that period.''

Then the answer goes on to say that that agreement was afterwards reduced to writing (by which we understand is meant the letter of December 14th, above mentioned) and that King knew it, but that he, scheming to get the property for less than its value, bought the interest of Burke and MacMacken, concealing the fact from defendant, and took the assignment in the name of Moss to hide his own interest, and then busied himself trying to organize a corporation that would take the property off his hands at a large price, all this without the knowledge of the defendant, who after the agreement of December 14th, had tried to form a company to purchase the property, but had been unable to do so through the contrary interference of King; that as soon as defendant discovered (which he did on December 18) that King had bought the interest of Burke and MacMacken, he immediately set about giving the redemption bond and accomplished that purpose on December 23rd, which, considering the circumstances, defendant says was within a reasonable time.

There was no evidence tending to show what were the terms of the alleged oral agreement between defendant Allbritain and Burke and MacMacken except what might be inferred from the letter of December 14th and the conduct of the parties; indeed, Allbritain in his answer says that that letter contains the agreement. There was no evidence tending to prove that King bought the interest for himself taking the assignment in the name of Moss, except that he and Moss are relatives and he negotiated the trade and advanced the money which Moss afterwards repaid him, and it was in evidence that it was understood between him and Burke that the assignment of the interest was not

to be mentioned to Allbritain, but Allbritain himself testified that Burke did inform him of it.

It came out in the evidence that on the day of the foreclosure sale, before the sale, King joined with Burke in buying two of the three notes covered by the deed of trust, and his share of the purchase money at the foreclosure sale, because of his interest in the two notes, was $209 and this sum was deducted by him from the $1225 he paid Burke and MacMacken for Moss. After the redemption bond was given and the controversy arose as to whether King should make the deed to Moss or wait until the expiration of the year in which to allow Allbritain to redeem, King took the advice of a lawyer who told him that the better way was to let Moss bring a suit to compel him to make a deed, then the rights of the parties would be settled in court according to law. King afterwards saw Moss in Kansas City and told him what the lawyer said and Moss authorized him to employ a lawyer to bring the suit and he employed the lawyer whom he had already consulted.

The trial court found the issues in favor of the plaintiff and rendered a decree requiring the trustee King to make the deed, from which judgment defendant Allbritain appealed.

I. When property covered by a deed of trust to secure a debt is sold by the trustee in conformity with the terms of the deed and is bought in by the *cestui que trust*, it is subject to redemption by the grantor in the deed or his assigns, at any time within one year from the date of the sale, by payment of the debt and interest and all legal charges and costs incurred in making the sale. [Sec. 4343, R. S. 1899.] Without that statute such right of redemption does not exist, and no one can have the benefit of that statute "until he shall have given security to the satisfaction of the circuit court for the payment of the interest to accrue after the sale,

and for all damages and waste that may be occasioned or permitted by the party whose property is sold. In case the circuit court is not in session, such security may be taken by the clerk of said court." [Sec. 4344.] The statute does not specify the period within which the security must be given, but it has been interpreted to mean that it must be given on the day of the sale. [Updike v. Merchants' Elevator Co., 96 Mo. 160; Dawson v. Egger, 97 Mo. 36.] Later it has been held that if the party cannot give the bond immediately but gives immediate notice that he intends to do so, he may have a reasonable time in which to accomplish his purpose. [Vanmeter v. Darrah, 115 Mo. 157.] Allbritain gave timely notice that he intended to give the bond and security, but he allowed forty-two days to elapse before doing so. The foreclosure sale occurred November 11th, the bond was given December 23rd. Was the bond given within a reasonable time? The statute contemplates prompt action, the reasonable time which it has been interpreted to give means a period in which the security could be obtained supposing the party to be desirous of obtaining it and able to do so; it means a reasonable time to accomplish that which the party could accomplish at once if it were not for some particular condition hindering, as for example sickness or other adventitious circumstance. The hindering cause to excuse the delay must be such as to prevent the immediate giving of the security which otherwise could and would be given and which would be given as soon as the conditions should cease. The time is not extended to enable the party to experiment in the market in trying to sell the property for more than it brought at the foreclosure sale, with intention only to let the purchaser at the foreclosure sale have it for his bid if the experiment should not succeed, but the time is given him to be used in diligent effort to obtain the security and give the bond. After the security is given

he may take the balance of the year, if he so chooses, in efforts to sell the property, but in that event he would not be experimenting at the expense of the purchaser at the foreclosure sale.

There is nothing in this record to show why the defendant Allbritain could not as well have given the bond on the day of the foreclosure sale as on the day he did give it; there is nothing to show that he made any effort to give it sooner than he did. His own testimony shows that the only efforts he made to save the property to the estate he represented were in the way of trying to organize a stock company to buy it, and even if the defendant King had crossed him in those efforts it would not excuse his failure to give the bond, King did not interfere with him in that respect.

In his answer Allbritain says that on the day of the sale he notified the trustee and the purchasers that he would give the security called for by the statute and "that he would, within one year from the date of said sale, redeem said property from the debt and interest secured by said deed of trust." The notice was given as stated, but the circumstances of the case, according to his own testimony, show that he had no purpose of paying the debt and redeeming the property unless he could effect a better sale of it in the meantime. In his testimony he said: "The situation was simply this: At all times from the time I got hold of it, until after the sale, and until after the 25th day of December, the matter was in such shape that I did not have any reasonable time to turn it, and I wanted to get matters in shape so I would have a reasonable time in which to turn it, but having to work at short range, my purpose was to get some reasonable sum out of the equity and let it go, and I gave them to understand that while I thought it was worth $3,500 to $4,000, that I would not stand for that, but would be reasonable about putting the equity in and taking stock in place of it." He also

testified that the assets of the estate other than the equity of redemption in this property did not amount to more than $50 or $100. And in his answer, after saying that he had given the notice, he said: "That within the time allowed by law for filing said bond, this defendant and the said Burke and MacMacken entered into an oral agreement whereby this defendant agreed that if said Burke and MacMacken would allow him until the 25th day of December, 1904, in which to dispose of said property or to get the same into contract for its disposition he would allow them to take their deed from the trustee and not exercise his right of filing said bond," etc. That is his own interpretation of his agreement, and it is a clear abandonment of the purpose, if he ever had the purpose, to give the bond to redeem. So far as the rights of Allbritain are influenced by that contract he has no cause to complain; there was no breach of it on the part of Burke and Mac-Macken or of Moss, their assignee. The contract did not forbid Burke and MacMacken selling their right under the certificate of purchase, their sale of it was no breach of faith or breach of contract. When they did sell it they gave the purchaser the written memorandum or letter of December 14th, which evidenced the agreement, and the assignee did nothing in violation of it. If there was any breach of that contract it was by Allbritain himself who after being allowed the time therein specified, to-wit, until December 25th, in which to try to effect a sale and failing therein, interposed the bond and thereby prevented a delivery of the deed which he had agreed might then be delivered.

II. The burden of Allbritain's complaint is that King, the trustee, thwarted him in his efforts to organize a corporation to buy the property. But the evidence does not sustain him in that complaint. The evidence does not show that King did anything inconsistent with his duty as trustee in the matter. It was

shown that he became a part owner of two of the mortgage notes before the sale, but no point is made of that in the pleadings. After the sale, King owed no duty to either party except the mere ministerial duty of executing the deed. He was under no obligation to assist Allbritain in organizing a corporation to take the property and he would have violated no trust obligation if, after the sale, he had organized a corporation himself with a view to buying the property from the purchasers at that sale. It was not until more than a month after the sale and after the contract of December 14th between Burke and MacMacken and Allbritain, wherein the latter abandoned (even if he then had) a right to give the redemption bond, that King, acting for Moss, bought from Burke and MacMacken their right in the property. After the time agreed on in the contract of December 14th had passed, he would have been justifiable in executing a deed conveying the property to the assignee, notwithstanding the bond filed on December 23rd, but in a spirit of fairness he preferred to have the point in dispute decided by the court, and it is not to his discredit that, after conferring with Moss, the purchaser, he engaged for Moss the lawyer who had been his own legal adviser to bring this suit.

The trial court took the correct view of this cause. The judgment is affirmed. All concur.