WILLIAM JUDAH and LIZA JUDAH, His Wife, Appellants, v. BEVERLY L. PITTS, HENRY C. REDMAN, MARTHA J. REDMAN, His Wife; WILLIAM N. BARTLETT AND COMPANY, a Corporation; JAMES H. DUNCAN and CHARLES H. BROMLEY.—62 S. W. (2d) 715.

Division One, August 3, 1933.

*Utz & Utz* for appellants.

*Brown, Douglas & Brown* for respondents.

FERGUSON, C.—Suit in equity to set aside a foreclosure sale of land made by a trustee, in a deed of trust, pursuant to a power of sale given by said deed of trust. The decree of the trial court was for defendants and plaintiffs appealed.

Except as to one item, to which reference will later be made, the entire evidence in the case was adduced by and on the part of plaintiffs and the following statement is compiled therefrom. The plaintiffs are husband and wife. The wife, Liza Judah, owned and had title to a tract of farm land in Buchanan County near the town of De-Kalb. The land involved is described by metes and bounds and contained approximately thirty-three acres. Defendant Bromley was an officer of the DeKalb State Bank, at the town of DeKalb and had been connected with that institution since 1917. Plaintiffs, from time to time, over a period of twelve or fourteen years transacted business with this bank, having small deposit accounts there and the bank at times loaning them money. Early in 1927, the plaintiffs desirous of negotiating a loan of $1000, with the farm near DeKalb as security, approached Bromley about the matter, seeking a loan at the bank. It appears such loans as they had theretofore obtained at the bank had been upon their personal note and in sums not exceeding perhaps $100. Bromley advised them the bank could not undertake the loan of $1000 which they were seeking but that he would endeavor to get the loan for them through defendant, Bartlett Company of St. Joseph. This company, a corporation, was engaged in a general real estate loan and brokerage business in St. Joseph and it appears that Bromley had an arrangement with it to recommend loans on real estate in the vicinity of DeKalb. Application was made by the Judahs, through Bromley, to the Bartlett Company, and the loan of $1000 was made. The Judahs joined in the execution of a negotiable, promissory note dated March 11, 1927, for $1000, payable to the order of the Bartlett Company, on April 1, 1932, with interest at the rate of six per cent per annum payable on the first day of April in each year, evidenced by interest coupons attached. At the same time and of the same date the Judahs jointly executed a deed of trust "to secure the faithful performance of the covenants and agreements" therein "contained and the payment" of the indebtedness evidenced by said note which is then described. Dale C. Bermond and James H. Duncan are named as trustees and the Bartlett Company, *cestui que trust*. By the terms of the deed of trust, the grantors, the Judahs, "covenant and agree to pay all taxes, assessments . . . or governmental rates, charges, or impositions which may be levied

or have been levied on said premises . . . before the same or any part thereof shall become delinquent . . . and to keep the buildings therein . . . insured for not less than $1000 in insurance companies acceptable to the party of the third part, its successors or assigns with loss payable to the party of the third part,'' etc. Said deed of trust then provides: ''In case of default in payment of any installment of principal or interest, in the payment of the taxes or assessments, in furnishing required insurance, or in the performance of any other covenant or agreement herein contained, then . . . either of the said parties of the second part, the survivor or his or their successor, or successors in trust may at any time during the continuance of any such default at the request of the legal holder of any note hereby secured proceed to sell said premises at the east front door of the Court House in the city of St. Joseph, in the County of Buchanan, at public vendue, to the highest bidder for cash, first giving not less than twenty days' notice of such sale by advertisement as now required by law; and upon such sale and the receipt of the purchase money, shall convey said premises to the purchaser or purchasers thereof, in fee simple; and out of the proceeds of such sale, shall pay;'' etc. At the time the loan was made by and through the Bartlett Company defendant Pitts was employed by that company. The evidence shows that Pitts, desiring to make an investment, took this loan over from the Bartlett Company immediately upon the completion of the loan and the note was duly assigned to him. This seems to have been known to plaintiffs and Bromley. However the Bartlett Company continued as agent and representative of Pitts for the collection of interest and in matters appertaining to the loan. Plaintiffs also owned a dwelling house in the town of DeKalb. Liza Judah, the wife, testified that she left the management of their properties, and the arrangement for and payment of taxes, interest, insurance and such matters to her husband. Taxes for the years 1927 and 1928 became delinquent upon the farm property described in the deed of trust and though repeatedly urged to pay the taxes plaintiffs failed to do so. William Judah testified that in August, 1929, he was told by one of the members of the Bartlett Company that ''if the back taxes were not paid they would be forced to foreclose;'' that thereafter and until shortly before the foreclosure proceeding was begun he received numerous letters from the Bartlett Company, Pitts and Bromley ''to the effect that if these taxes were not paid they were going to have to foreclose;'' and that ''there was correspondence for some time asking me to pay'' the back taxes. Two of the letters received by plaintiffs appear in the evidence. One dated October 29, 1929, directed to William Judah, written by Pitts, refers to the delinquent taxes for the years 1927 and 1928 and states: ''We cannot permit the taxes to accumulate in this manner and unless they are taken care of we will

be forced to foreclose. Will you see that these taxes are paid and mail the tax receipts to Bartletts.'' The other letter dated November 26, 1929, written by Bromley, as vice-president of the DeKalb State Bank, to Mrs. Judah, first urged payment of a balance with interest remaining unpaid on a past due note which she owed the bank and then concludes: ''I talked to Mr. Pitts today regarding the interest and taxes on your farm and he advised me that they are going to immediately advertise the farm for sale by foreclosure as they have not been able to get interest or taxes. I would suggest that if you wish to do anything that you do it immediately and avoid any further expense.'' The amount of the delinquent taxes was not stated in the testimony but such taxes are referred to as amounting to ''several hundred dollars.'' William Judah testified that at various times during the period he was being repeatedly urged to pay the taxes with notice that foreclosure would be made if same were not paid, he made unsuccessful efforts to borrow money for that purpose. The first of December, 1929, Pitts ordered the trustee Duncan to proceed with the foreclosure. The notice of sale was published the proper period of time in the St. Joseph Daily Courier, the date, or time of sale, therein designated, being ''Monday, the 30th day of December, 1929.'' As the writer construes the testimony of Bromley, which is the only testimony bearing on this phase, the first information Bromley had that foreclosure had been commenced was when he saw the notice of sale in the ''Courier.'' Bromley called William Judah's attention to the notice and ''read the notice of the sale to Mr. Judah.'' Plaintiffs knew the foreclosure had been ordered, the sale advertised and the date and place of sale but did not either attend or arrange to have a representative present. No person present at the sale testified and we find no evidence in the record as to the manner in which it was conducted. Presumably the trustee conducted the sale in a proper manner. The trustee's deed, which, with notice of sale and proof of publication thereof attached, was offered in evidence, after formal preliminary recitals, states: ''Whereas, pursuant to the powers so vested in me and in accordance with said request and notice, I did, on the 30th day of December, 1929, between the hours of twelve o'clock M. and three o'clock P. M., at the east front door of the Court House in the City of St. Joseph in said County of Buchanan in the State of Missouri, offer for sale for cash to the highest bidder at public vendue the property hereinafter described, and at said sale Beverly L. Pitts being the highest bidder for said property in the sum of Seven Hundred Fifty Dollars, the same was struck off and sold to him at that price and sum.'' Pitts the owner of the note had some time prior to the sale left the employ of the Bartlett Company entering the employ of a St. Joseph bank. He did not personally attend but was represented at the sale by some member of the Bartlett Company. Bromley and Pitts testified that prior to

the sale there had been no conversation or discussion between them about the sale or the purchase of the land. However shortly after the sale Pitts called Bromley by telephone, told him of the sale and stated: "Nobody was up here (St. Joseph) for the sale. I supposed somebody would be up here;" that he (Pitts) had bought the land but "don't want it" and asked Bromley to try to find a purchaser for the land to which proposal Bromley replied, "I will see what I can do with it." As the writer interprets the testimony Bromley later requested Pitts to fix a net price on the land. Pitts sent his brother to inspect the property after which Pitts advised Bromley he wanted net $60 an acre or $1980. Bromley in seeking a purchaser entered upon negotiations with defendant Redman who owned land adjacent to the Judah land. It seems that Redman did not know about the foreclosure sale and the first information he had thereof was when Bromley approached him after the sale, told him Pitts had bought the land upon foreclosure and that Pitts was now offering the land for sale. Redman testified: "If I remember correctly he (Bromley) offered to sell the place for $3500. That was the first price. I could not tell how many conversations we had or how much time the negotiations extended over . . . possibly a week. I cannot tell how many conversations we had before we got together and agreed upon a price. He told me Mr. Pitts owned the place. . . . He said he was selling for Mr. Pitts. . . . I had never at any time spoken to Mr. Bromley of wanting that place or having anything to do with it. The first time anything was said about that between Mr. Bromley and me was when he came out after the foreclosure sale. . . . It was after some negotiations I agreed to pay $3250. . . . The land is adjacent to land which I own near DeKalb. I considered it available and valuable to me for that reason." Having agreed with Redman upon a purchase price Bromley went to Pitts, gave him his personal check for $1980, the price asked by Pitts, and obtained a warranty deed from Pitts to Redman, the consideration stated therein being one dollar. Bromley did not tell Pitts what Redman was paying. Bromley delivered the deed to Redman who thereupon paid Bromley $3250. Plaintiffs refused to yield possession of the land and on the 11th day of March, 1930, Redman conveyed the land to Bromley who refunded to Redman the purchase price paid by him. As to this transaction Redman testified: "I paid cash for the place. I don't remember how long I had the place before I was notified about this suit. I was served as one of the defendants. I deeded the place back to him (Bromley) . . . that was after the suit was brought."

"Q. After buying the place why did you deed it back to him? (Bromley). A. I was to get possession the first of March and after this suit was brought that was impossible and that was our agreement that I was to get possession the 1st of March or my money back.

"Q. Who made that agreement with you? A. Mr. Bromley."

Redman further stated that he never had any negotiations with Pitts, the Bartletts or "anybody else" other than Bromley, and "I deeded the place to Mr. Bromley about March 11," because "I could not get possession in pursuance to that agreement and he paid me my money back." The defendants offered only one witness, the Sheriff of Buchanan County, who testified, that the usual and customary time of day observed in that county for making foreclosure sales "is two o'clock in the afternoon."

The petition is lengthy and the allegations vague and general. It is averred therein "that the St. Joseph Daily Courier is in no sense a 'newspaper' as that term is commonly understood;" that the trustee Duncan was an employee of the Bartlett Company "and all his actions . . . as trustee were at the direction and request of defendants," Bartlett Company and Pitts; that the sale "was advertised for December 30, 1929, and that at a time of day convenient to said trustee and another employee of the Wm. N. Bartlett and Company they proceeded to the court house steps and went through a pretended form of sale; that said pretended sale was illegal and void in that there were no bidders except the agent of Bartlett and Company who suggested $750 to which the trustee agreed" and thereafter executed a trustee's deed to Pitts; that Bromley was at all times aware of plaintiff's financial condition; that he had information of the intention on the part of Pitts to foreclose the deed of trust before the advertisement was published and "had knowledge of the day upon which the sale was to be had . . . and knowledge that Redman was a prospective buyer and was interested in said premises yet did not inform Redman of said facts so he could attend the sale nor did defendant Bromley attend . . . but purposely stood aloof until" the land "was bought in by defendant Pitts and then entered into an agreement with the other defendants, except Redman, by which they would get Plaintiff's property for a nominal sum;" and "that all matters herein complained of committed by defendants Pitts and Bromley from the trustee's notice of sale to the filing of the petition herein were done by them with the intent and purpose of defrauding plaintiffs of their property aforesaid; and that by means of all said fraudulent conduct .: . . . succeeded in obtaining deeds to plaintiffs' property." The petition prays that the foreclosure sale be set aside, the trustee's deed to Pitts, and the deeds from Pitts to Redman. and Redman to Bromley be canceled and plaintiffs be permitted to redeem.

Here appellants contend the foreclosure sale was illegal and void and, under the evidence, should be set aside for the following reasons:

■ The advertisement of sale was not published in a "newspaper" as required by statute. The owner and publisher of the St. Joseph Daily Courier testified that the paper was published daily, except

Sunday, at St. Joseph; that it had been so published for thirty years; that it was devoted to the publication of "court, real estate and financial news . . . is published for the purpose of legal notices and advertisements or publications in suits . . . at least 95% of the legal publications" of Buchanan County "appear in my paper and that has been true indefinitely. When I say publications I am including notices of foreclosure sales . . . practically all are advertised in my paper. The circulation is principally to real estate" dealers, "lawyers and persons interested in the particular items" published therein. This testimony is uncontradicted. Our statute (Sec. 3077, R. S. 1929) requires that notice setting forth "the date and book and page of the record of such . . . deed of trust, the grantors, the time, terms and place of sale and a description of the property to be sold shall be given by advertisement, inserted for at least twenty times, and continued to the day of sale, in some daily newspaper in counties having cities of forty thousand inhabitants or more." Appellants' contention that the St. Joseph Daily Courier is not a newspaper within the contemplation of this statute is answered and disposed of by decisions of this court holding that such a publication meets the statutory requirement and is within the term "newspaper" as therein used: Kellogg v. Carrico, 47 Mo. 157; Kingman v. Waugh, 139 Mo. 360, 40 S. W. 884. [See, also, 41 C. J. p. 759.]

"That the advertisement did not set out the time of sale, sufficiently." The advertisement designated the time of sale as "Monday, the 30th day of December, 1929" but did not specify the hour or between what hours of that day the sale was to be made and it is claimed that such omission renders the notice fatally defective. The terms of the deed of trust authorizing a sale provide that during the continuance of default the trustee may upon the request of the legal owner of the note secured proceed to sell the property "at the east front door of the court house" of that county "at public vendue, to the highest bidder for cash, first giving not less than twenty days notice of such sale by advertisement as now required by law." We have quoted supra the pertinent parts of the statute specifying what such notice shall set forth. It will be noted that the statute does not require that the hour of sale be set forth the language is, "the time, terms and place of sale." The notice published does state the place of sale and terms of sale in strictest conformity with the provisions of the deed of trust and states the time of sale as, "Monday, the 30th of December, 1929." We think this should be taken as a substantial and sufficient compliance with the requirements of both the deed of trust and the statute in view of the fact that there is nothing in the evidence tending to show that by reason of the failure to state within or between what hours the sale would be made interested persons or prospective bidders were misled or prevented from being present at the sale or that the sale was not made at the usual hour for such

sales as established by custom in that county and nothing to the contrary appearing it must be presumed that the sale was made at such usual hour. [Meier v. Meier, 105 Mo. 411, 16 S. W. 223.] Under such circumstances we cannot hold that the failure of the notice to specify the hour, or between what hours, the sale would occur affected the validity of the sale.

■ Misconduct of the trustee or failure of the trustee to properly protect the interests of plaintiffs and that the sale was tainted by fraud on the part of and collusion between Pitts and Bromley before and at the time of the sale with a view to acquiring plaintiff's land at a nominal price. The facts we have drawn from the evidence and set out above are uncontradicted. It appears that over a period of four months before the foreclosure proceeding was commenced by the first publication of notice, on December 5, 1929, the Bartlett Company and Pitts had urged plaintiffs to pay the delinquent taxes and also to pay insurance premiums which were due and unpaid and at the same time plaintiffs were advised that if they did not pay the taxes and insurance in conformity with the terms and covenants of the deed of trust foreclosure would be made. As the writer reads the testimony of plaintiffs it seems to betray an indifference about the matter. Both in their petition and by *innuendo* in their printed argument plaintiffs seem to take the position that the refusal by the DeKalb Bank, with which Bromley was officially connected, of their request for a further loan in an amount sufficient to cover these back taxes and also certain other items wholly disconnected with the Bartlett Company loan or property securing same points to and indicates a sinister motive on the part of Bromley to force the foreclosure sale. Plaintiffs made the same application to another bank and met a like refusal. They also complain that Bromley did not make any effort to interest bidders nor attend the sale. There is not a scintilla of evidence indicating any agreement or duty on the part of Bromley to obtain loans for plaintiffs or to act for or represent them in the matter. Redman, whom plaintiffs do not charge with any wrongdoing, testified that he had never expressed any interest in purchasing the Judah place; that he had never mentioned the matter to Bromley and that Bromley did not approach him about purchasing the property until after the foreclosure sale. In writing plaintiffs about past due paper at the bank Bromley advised them late in November that Pitts had told him he would commence foreclosure immediately if they did not pay the delinquent taxes and suggested they make arrangements to do so. The DeKalb Bank was subscriber to the Daily Courier and when Bromley discovered the sale notice he advised plaintiffs thereof. With knowledge of the sale date plaintiffs did not, so far as the record shows, call upon Pitts or the Bartlett Company, made no effort to pay the taxes, insurance and costs and thereby prevent the sale, or to solicit or interest bidders or buyers

for the land nor did they attend the sale or arrange for representation thereat or the giving of a statutory redemption notice. There is no direct evidence tending to show, and such a conclusion cannot be arrived at except by far fetched conjecture and speculation, any prearrangement, collusion, understanding, or purpose between Pitts, Bromley, the Bartlett Company and the trustee, or any of them, to conduct the sale in an unfair manner or restrain the bidding thereat. Certainly there was no element of secretiveness about the sale. It was duly and properly advertised in the medium commonly and generally used for that purpose. The plaintiffs had been warned for four months of the intention to commence foreclosure and when the notice was published they read it and had full knowledge of the impending sale. As we have said there is no evidence of a surreptitious sale by the trustee or at an unusual hour as in Holdsworth v. Shannon, 113 Mo. 508, 21 S. W. 85, and Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073, cited by appellants and those cases and other cases appellants cite are not applicable on the facts here. Nor is there evidence of trickery, deception, elusive moves to keep down bidding, or words, acts or conduct on the part of anyone calculated or intended to, or having that effect, restrain, discourage or suppress bidding or competition or induce any person who was or might be interested not to attend the sale or enter a bid thereat. The sale appears to have been in all respects regular. Default had occurred and continued. Pitts had a right to request the trustee to proceed with the foreclosure. The trustee advertised according to the terms of the deed of trust and the requirements of the statute and apparently the sale was openly and fairly conducted and the land sold to the highest bidder. If the petition be construed as sufficiently charging fraud the evidence does not tend to show fraud attending the sale, either in its inception or consummation. It is true equity will intervene in a proper case to relieve against fraud in a trustee's sale but in such a case fraud cannot be presumed, it must be proved by clear, convincing and cogent evidence or circumstances. [Schwarz v. Kellogg (Mo.), 243 S. W. 179.] We approve and reiterate the rule which appellant seeks to invoke, citing numerous cases in support thereof, that a trustee in the exercise of the power of sale of real estate conferred by a deed of trust is considered as the agent of both parties—debtor and creditor—and he should act in performing the duties of the trust with impartiality and integrity (Goode v. Comfort, 39 Mo. 313; West v. Axtell, 322 Mo. 401, 17 S. W. (2d) 328), but the evidence in the instant case does not show either intentional or unwittingly unfair acts or conduct on the part of the trustee in the steps leading to or in the actual making of the sale. Appellants point to the fact that the trustee Duncan was an employee of the Bartlett Company but do not seem to make that a distinct ground of objection to the validity of the sale properly confining their sug-

gestions in that regard to the proposition that it is a circumstance to be considered in connection with any other facts and circumstances in evidence tending to show fraud or unfair conduct on the part of the trustee or irregularity in the sale and requires that the acts of such trustee be closely scrutinized. "The fact that the creditor's agent, attorney or employee is the trustee will not invalidate the sale although his acts will be closely scrutinized to see that he has performed his duties impartially." [41 C. J. p. 940; Schwarz v. Kellogg (Mo.), 243 S. W. 179; Cloud v. Trust Co., 52 Mo. App. 318.] If the uncontradicted and unimpeached testimony of Pitts, Bromley and Redman is accepted, and as the trial court evidently accorded their testimony full credibility certainly we have neither ground or right to do otherwise, the matter of making a sale of the land and the negotiations to that end culminating in the sale to Redman had not been discussed, arranged or considered prior to the sale and that train of events was first set in motion by Pitts' request to Bromley, made after the sale, that Bromley undertake to find a purchaser for the property.

Lastly appellants attack the sale on the ground of inadequacy of price. We find the general rule succinctly stated at 41 Corpus Juris, page 1026: "Mere inadequacy of price is not sufficient ground for setting aside a sale under a power in a mortgage or trust deed where the sale was lawfully made and rightly conducted, with full opportunity for competition in the bidding, and without fraud, partiality or oppression. . . . Inadequacy of price is, however, always a circumstance to be considered in connection with other grounds of objection to the sale, and will be sufficient to justify setting the sale aside when coupled with any other circumstance showing unfairness, misconduct, fraud or even stupid management resulting in the sacrifice of the property."

We think the applicability of the following pronouncements of this court, in cases of this character, to the facts and the situation existing in the present case will appear.

"The rule is well settled in this State that mere inadequacy of price is not sufficient to set aside a sale of the character here in question, unless so gross as to raise the inference of fraud or imposition. . . . While this property sold for only $100, when it was worth $500 cash, still we cannot say the price was so grossly inadequate as to raise the inference of fraud. No case which we have examined justifies any such conclusion. It is evident the decree of the trial court cannot stand on any such ground, though the inadequacy of the price is a matter for consideration in connection with the other evidence." [Harlin v. Nation, 126 Mo. 97, 27 S. W. 330.]

"It is to be regretted that the property in controversy brought at most not more than one-fourth of its value at the trustee's sale, but such things frequently happen, and will continue to happen as

long as people encumber property. . . . By the great preponderance of evidence before us we find that the sale was conducted fairly and that the judgment should be affirmed." [Roby v. Smith, 261 Mo. 192, 168 S. W. 965.]

"The evidence does not disclose any unfairness on the part of the trustee in connection with the sale. . . . Appellant next urges that the sale should be set aside on account of inadequacy of price, coupled with inequitable circumstances attending the sale. The property brought a little more than one-third of its alleged value. Under our decisions, this inadequacy is not so gross as to shock the moral sense and justify setting the sale aside solely on that ground, nor does it appear from the evidence that the trustee's sale was not fairly conducted in all other respects. We have many times held that in such case the sale will not be set aside. Appellant says that equity affords plaintiff a right to redeem independently of the statute. True, the statutory remedy of redemption is not exclusive, but, as Judge LAMM observed in Arnett v. Williams, 226 Mo. 109, 1. c. 118, 125 S. W. 1154, the statutes provide for redemption as of course, while in equity cases redemption is the mere price put upon the decree in order to do equity. The right of redemption as of course does not exist without the redemption statute (Moss v. King, 212 Mo. 578, 1. c. 584, 111 S. W. 589), and in the case now before us redemption cannot be had as of course, but only as the price of fraud, and, fraud being never presumed, it must be proved." [Oakey v. Bond (Mo.), 286 S. W. 27.]

"There must be something more than mere inadequacy of price—some fraud or unfair dealing; some deceit practiced upon the mortgagor, or some unfair advantage taken in respect of the transaction. In the case at bar there is no evidence whatever of fraud or unfairness, and the sale was in all respects properly conducted. The defendant was repeatedly urged by the holder of the note and his attorney to make settlement, and it was only after long delay, and after all efforts to persuade or induce him to take up the note had proven unavailing, that the land was advertised for sale under the provisions of the deed of trust. He was personally notified by the holder of the note that the land was advertised for sale, and was also sent a copy of the published notice; but he stubbornly and heedlessly allowed the publication to continue, and the land to be sold at a sacrifice, without doing anything whatever to prevent it, or to protect his property. The court did not find that the sheriff, acting as trustee, conducted the sale unfairly, or that there was any fraud or deception practiced upon the defendant, or any collusion. . . . It is shown by the evidence that the sale . . . was held at the place designated in the trust deed, and at the hour such sales are customarily made. . . . The defendant could have attended the sale, of the time and place of which he had full knowledge, and could

have bid in the land for the comparatively small amount of the indebtedness and the costs of the foreclosure, but he chose not to do so. No reason has been shown why he could not have attended the sale, or why he could not have made provision for the payment of his indebtedness. The consequences are as much the fruit of his indifference to his obligation as of his inexcusable neglect to protect his property. . . . The power of a court of equity is not to be exercised to relieve a party or other person from the consequences of his own inexcusable neglect." [Betzler & Clark v. James, 227 Mo. 375, 126 S. W. 1007.]

Other cases in point under the facts of this case are: Carter v. Abshire, 48 Mo. 200; Vail v. Jacobs, 62 Mo. 130; Meyer v. Kuechler, 10 Mo. App. 371; Maloney v. Webb, 112 Mo. 575, 20 S. W. 683; and Schwarz v. Kellogg, supra. Since the evidence does not disclose fraud, oppression or unfairness in the sale we are, constrained to hold, with the trial court, that there was no such inadequacy of price as requires a court of equity to set aside the sale on that ground alone.

The judgment of the circuit court is therefore affirmed. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by Ferguson, C., is adopted as the opinion of the court. All the judges concur.