**Earl W. ROARK and Janice Jean Tye, Appellants,**

v.

**PLAZA SAVINGS ASSOCIATION et al., Respondents.**

No. KCD 29523.

Missouri Court of Appeals, Kansas City District.

Aug. 28, 1978.

Alan E. South, Crews, Milliard & South, Kansas City, for appellants.

Keith E. Witten, Sandler, Balkin, Hellman & Weinstein, Thomas D. Hyde, Stubbs & Mann, Kansas City, for respondents.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

TURNAGE, Judge.

Earl W. Roark and Janice Jean Tye filed their petition in equity to set aside a trustee's sale of real estate because of an alleged breach of duty by the trustee and for failure to give proper notice, for an accounting of the proceeds of the sale, and for damages against the trustee personally for breach of duty. Defendants in the suit were Plaza Savings Association, holder of a note secured by a deed of trust; David Achtenberg, the successor trustee; and Peter James Kemp and Melody Jean Kemp, purchasers at the trustee's sale. The Kemps filed a counterclaim seeking damages and ejectment against Roark and Tye and to have title quieted in them. The trial court found for the defendants on the claim of Roark and Tye and found in favor of the Kemps on their counterclaim. Roark and Tye appeal.

Roark and Tye contend the judgment should be reversed because the trustee's sale was void for failure to give the notice required by § 443.325, RSMo 1975 Supp., and because the trustee breached his duty to act with fairness and integrity in the conduct of the trustee's sale. Affirmed.

Janice Tye and her former husband, Howard, originally acquired title to Lot 40, Blue Dawn Estates, a subdivision in Independence. As a part of the property settlement in their divorce, Janice Tye acquired title to the property. Thereafter a loan secured by a deed of trust on the real estate became delinquent and Janice was threatened with foreclosure. At that time she worked for Earl Roark in his real estate business. Roark and his wife were willing to help Janice save the property and to that end accepted a conveyance of the property. Roark and his wife then obtained a loan from Plaza Savings Association and executed a deed of trust to secure the payment. Payments on the note to Plaza Savings became delinquent and Plaza began foreclosure proceedings.

The trustee named in the deed of trust from Roark to Plaza was Sheldon Sandler. However, Sandler had removed from the state of Missouri and an associate in his law

office, David Achtenberg, was appointed successor trustee. Sandler caused a notice of the impending trustee's sale to be sent to Roark. This notice was received by Tye and she signed Roark's name to the certified mail receipt. Both Roark and Tye acknowledged they knew of the sale and talked with Harry Griffitts about attending the sale for the purpose of bidding. Prior to going to the sale, Griffitts met with Warren Hamilton. Hamilton gave Griffitts a check drawn on the account of Hamilton Hauling, Inc. This check was signed by Hamilton but was not otherwise filled in.

When the trustee's sale began those in attendance included David Achtenberg, Sheldon Sandler, the Kemps, Mr. Kemp's father, Phil Roberts, who was retired and who was interested in purchasing the property, Harry Griffitts, Roark and John Mitchell, an attorney for Roark.

Prior to the commencement of the sale Roark delivered to Achtenberg a document entitled Redemption Notice. Achtenberg began the sale by reading the notice of sale published in the newspaper and the Redemption Notice. The Redemption Notice was in the conventional form except it stated Roark intended to redeem if the property were bid in by Plaza Savings or by any other bidder.

Prior to the sale the Kemps had talked with Mr. Kemp's father about the possibility of buying the property at the sale. They had looked at the house and decided they would bid a maximum of $23,000.

When Griffitts arrived at the sale he told Sandler and others he was there to help Tye who he considered to be the actual owner of the property.

After the bidding began Sandler made a bid of $15,876.26. This was followed by a bid from Roberts of $15,876.27. Thereafter, Kemp bid $16,000, Roberts $16,200 and Kemp $16,500. At this point Griffitts made a bid of $16,600, Kemp bid $16,750 and Griffitts bid $16,755. After the last bid by Griffitts, Achtenberg became aware of some feeling that perhaps Griffitts was not able to pay his bid. Achtenberg had announced at the beginning of the sale that

the sale was for cash, which meant cash, cashier's check or certified funds. When Achtenberg became aware of the doubt concerning Griffitts, he stopped the sale and announced he was going to require the Kemps and Griffitts to display to him the funds or certified check with which they intended to pay their bid. Achtenberg drew the Kemps aside so their assets would not be displayed to any other bidder and ascertained the Kemps had one cashier's check in the amount of $16,000 and another in the amount of $1,000 and cash. Griffitts displayed to Achtenberg the check signed by Hamilton on the Hamilton Hauling, Inc., account. The check still had not been filled in except for the signature of Hamilton. Achtenberg informed Griffitts he had announced the sale required payment by cash, cashier's check or certified funds. Griffitts assured Achtenberg the Hamilton check was good and stated Achtenberg could call the bank to verify that fact. Achtenberg reiterated that bids must be paid as he had previously stated. Griffitts did not request the sale to be postponed to allow him time to get the proper funds and Achtenberg then announced he could not accept any bids from Griffitts. Achtenberg invited further bids but none were forthcoming and he knocked down the property to the Kemps at their bid, prior to the bid of Griffitts, in the amount of $16,500.

The Kemps went to Achtenberg's office and paid the $16,500 and Achtenberg delivered a trustee's deed. This lawsuit followed.

Roark and Tye first contend the trustee's sale is void because the notice of sale given to them was prepared and sent by Sandler and not by Achtenberg. They contend § 443.325 requires the notice to be sent by the trustee only and a notice sent by any other person is void and renders the sale held under such notice to be void. § 443.-325, ¶ 3, provides:

3. In the event of foreclosure under a power of sale, the foreclosing mortgagee or trustee shall, not less than twenty days prior to the scheduled date of the sale, cause to be deposited in the United States

mail an envelope certified or registered, and with postage prepaid, enclosing a notice containing the information required in the published notice of sale referred to in section 443.320, addressed

(1) To each person whose name and address is set forth in any such request recorded at least forty days prior to the scheduled date of sale; and

(2) To the person shown by the records in the office of the recorder of deeds to be the owner of the property as of forty days prior to the scheduled date of foreclosure sale at the foreclosing mortgagee's last known address for said record owner; and

(3) To the mortgagor or grantor named in the deed of trust or mortgage at the foreclosing mortgagee's last known address for said mortgagor or grantor.

Roark and Tye had not filed any request for notice of record. The argument made proceeds from the foundation that a deed of trust is different from a mortgage with a power of sale and under a deed of trust the trustee makes the sale and not the mortgagee. The argument concludes that since the trustee makes the sale the statute requires the trustee only to give the notice.

It should first be noted that the above section treats deeds of trust and mortgages with power of sale in the same manner. This section refers to both a sale under a mortgage and under a deed of trust. § 443.410 [1] provides:

Deeds of trust in the nature of mortgages of lands may, in addition to being forecloseable by suit, be also foreclosed by trustee's sale at the option of the holder of the debt or obligation thereby secured and the mortgaged property sold by the trustee or his successor in the same manner and in all respects as in case of mortgages with power of sale; and all real estate which may be sold under any such power of sale in a mortgage deed of trust hereafter made and which at such sale shall be bought in by the holder of such debt or obligation or by any other person for such holder shall be subject to redemtpion by the grantor in such mortgage deed of trust or his heirs, devisees, executors, administrators, grantees or assigns at any time within one year from the date of said sale . . .

When § 443.325 and § 443.410 are considered together, it is apparent the term "foreclosing mortgagee" refers to either a mortgage with a power of sale or a deed of trust. A mortgagee is defined as one who takes or receives a mortgage. Black's Law Dictionary, Revised Fourth Edition (1968). No distinction has been made in the sections mentioned between mortgages with power of sale and deeds of trust. The sale under the deed of trust was at the option of Plaza Savings as the holder of the debt or obligation. Because both types of mortgages are covered in § 443.325 there is no reason to draw any distinction in the meaning of "foreclosing mortgagee" between the different types of mortgages.

This court holds the term "foreclosing mortgagee" as used in § 443.325 refers to the holder of the debt or obligation under both a mortgage with a power of sale and a deed of trust. This section authorizes the notice to be given by either the trustee or foreclosing mortgagee. Here the notice was given by Sandler on behalf of Plaza Savings, the foreclosing mortgagee. The notice thus given was valid.

Roark and Tye next contend the trustee's sale should be set aside because Achtenberg breached his duty in the conduct of the sale when he required Kemp and Griffitts to in effect "turn out their pockets" to demonstrate they were able to pay their bid. As noted, Achtenberg approached Kemp and Griffitts separately and drew them aside so any information revealed to him was not available to the other bidders. Roark and Tye argue that a trustee in conducting a sale has no power to make any inquiry concerning a bidder's financial ability but must accept any bid made and later if a successful bidder is unable to pay his bid the trustee must follow the alternatives set

1. All statutory references are to RSMo 1969 unless otherwise indicated.

out in *Stone v. Stone,* 176 S.W.2d 464, 467[4, 5] (Mo.1944).

Roark and Tye rely upon *Long v. Manning,* 455 S.W.2d 496 (Mo.1970). In *Long* the court held a trustee's sale for cash was not nullified when the high bidder did not pay the trustee until six days after the sale. However, *Long* did not deal with the conduct of the sale but held only the trustee had the discretion to receive the purchase price within six days after the date of the sale.

The question involved here is the conduct of the trustee during the progress of the sale. No Missouri case has been cited or located which bears on the question presented, i. e., may the trustee interrupt the sale and make inquiry as to the ability of bidders to pay their bid?

Courts have made general observations concerning the function and duties of trustees. In *West v. Axtell,* 322 Mo. 401, 17 S.W.2d 328, 334[1] (Mo.1929) the court quoted from an earlier case:

" 'Trustees are considered as the agents of both parties—debtor and creditor—and their action in performing the duties of their trust should be conducted with the strictest impartiality and integrity. . .
Courts of equity have always watched their proceedings with a jealous and scrutinizing eye; and where it is clearly shown that they have abused their trust, or combined with one party to the detriment of the other, relief will be granted. Not that a sale made by them will be set aside on slight and frivolous grounds; but where it appears that substantial injury has resulted from their action, where, in pursuance of their powers, they have failed or neglected to exercise a wise and sound discretion, equity will interfere.' "

In *Petring v. Kuhs,* 350 Mo. 1197, 171 S.W.2d 635, 637[1] (1943) the court noted one of the duties of the trustee was " 'to reject fraudulent bids made to frustrate the sale . . . .' "

It has been noted that California has a similar history with reference to foreclosure under a power of sale contained in a deed of trust and for that reason California precedent is helpful. *Federal National Mortgage Ass'n v. Howlett,* 521 S.W.2d 428, 432[2, 3] (Mo. banc 1975).

In *Quinn v. Mathiassen,* 4 Cal.2d 329, 49 P.2d 284 (1935) the court approved the action of the trustee when he ignored the bid of a stranger who was unwilling to inform the trustee as to his ability to pay his bid in cash. The court stated the trustee considered the person to be irresponsible and not a bona fide bidder.

In *Security-First Nat. Bank of Los Angeles v. Cryer,* 39 Cal.App.2d 757, 104 P.2d 66, 69[1–4] (1940) the court said:

"Surely it cannot be said that upon a trustee's sale under a deed of trust the auctioneer is required to accept any bid that is made, irrespective of whether the amount of the bid is produced and where no information is forthcoming as to the financial ability of the bidder. If this were true, any debtor could attend a foreclosure sale of his property and make any bid he cared to, without any intention of actually paying the amount of his bid. The sale then, of course, would have to be held all over again, new notices gotten out, etc. If such procedure were permitted and carried to its possible ultimate conclusion, any foreclosure sale could be prevented indefinitely."

The argument of Roark and Tye would lead to the result mentioned in *Cryer.* Their position would require the trustee to be little more than a robot who would have no choice but to accept any bid made. It is clear the law requires the trustee to exercise a sound discretion and to conduct the sale in the manner which would render the sale most beneficial to the debtor at the best price possible. However, this means the trustee must conduct the sale so that the property is sold rather than merely go through an exercise which would result in accepting any bid made with the result that the successful bidder might later prove to be unable to pay his bid.

Here Griffitts made it clear to Sandler, the Kemps and Achtenberg that he was

attending the sale on behalf of Tye and was there to help her. The Kemps justifiably became concerned that if Griffitts were able to bid $16,600 and $16,755 then something was amiss because the amount of indebtedness required to be paid Plaza Savings was less than these bids. Of course the Kemps wondered why someone acting on behalf of the mortgagor would pay more than the indebtedness at a foreclosure sale rather than satisfy the debt and avoid the sale.

■ The trustee must be able to exercise discretion in requiring bidders to satisfy him that they will be able to pay their bid in cash. Any other rule would enable debtors to indefinitely frustrate a foreclosure sale.

In this case Griffitts did not show he would have been able to pay his bid. The evidence revealed that at the time the trustee's sale was conducted the Hamilton Hauling account contained $1,513.59.

Roark and Tye further contend the action of the trustee when he requested evidence of the ability of a bidder to pay his bid had a "chilling effect" on the sale. The only bidders adversely affected by the trustee's inquiry would be those who could not pay their bid. Furthermore, Roark is in no position to complain of any "chilling" of the bidding when he gave a redemption notice which clearly violated § 443.410 which stated redemption would be made if the property was sold to any bidder. *Thielecke v. Davis,* 260 S.W.2d 510, 512[3] (Mo.1953).

■ So long as the bidders are not required to reveal to any other bidder their assets or intentions in future bidding, the trustee may in his discretion require a bidder to satisfy him of his ability to pay his bid as required by the terms of the sale.

No abuse of discretion on the party of the trustee is shown. The judgment is affirmed.

All concur.