**BOATMEN'S BANK OF PULASKI COUNTY, Plaintiff–Respondent,**

v.

**Vernon M. WILSON and Thelma F. Wilson, Defendants–Appellants.**

No. 17677.

Missouri Court of Appeals, Southern District, Division Two.

July 16, 1992.

Lincoln J. Knauer, Farrington & Curtis, Springfield, for plaintiff-respondent.

Ina Ruth McKune, Thomas, Birdsong & Clayton, Rolla, for defendants-appellants.

MAUS, Judge.

Vernon M. Wilson and Thelma F. Wilson, his wife, (Wilsons), defaulted in the payment of two notes payable to and held by Boatmen's Bank of Pulaski County (Boatmen's). Boatmen's foreclosed on two deeds of trust securing the payment of those notes. In this consolidated action, Boatmen's sought a deficiency judgment. Wilsons asserted a counterclaim or an offset for the amount of the deficiency because of the Trustee's alleged breach of trust and Boatmen's allegedly inequitable conduct. The trial court entered a judgment for Boatmen's for $107,564, plus interest as set forth in the judgment of the trial court, and for $2,600 attorney fees. Wilsons appeal.

The following is a resume of the essential facts. Wilsons' note of December 1, 1987, in the original amount of $210,000 was secured by a deed of trust. The named Trustee was "Wm Tom Murray", Chief Executive Officer of Boatmen's. The described property was two tracts in Laclede County. The tracts were divided by a road. The tracts had been used by the Wilsons for manufacturing boats.

Wilsons' note of June 12, 1989, in the original amount of $45,000, was secured by a separate deed of trust. The named

Trustee was "Wm Tom Murray". The described property was a tract in Pulaski County, which was used as a "detail shop" for automobiles.

By June 1990, Wilsons had defaulted in payment of both notes. Boatmen's determined to foreclose on the Laclede County property. On an undisclosed date, notices providing for a sale on an undisclosed date were mailed. In the meantime, Boatmen's obtained an independent appraisal of the value of the Laclede County property. The appraiser valued Tract I at $65,000, subject to a disclaimer of consideration of environmental problems with the property. The appraiser valued Tract II at $155,641. The foreclosure proceedings were halted. Boatmen's employed an engineering firm, McLaren, to perform a preliminary environmental assessment of the Laclede County property. On July 9, 1990, McLaren—Central U.S. Office, submitted an extensive "Phase I Environmental Assessment Report" on the Laclede County property. The report, among other things, included the following statement:

"Both the north and south parcels have potentially been impacted by on-site boat manufacturing activities. Additionally, the south property has potentially been impacted by suspected on-site and off-site dumping of solid and/or liquid wastes. A soil and groundwater investigation is required to determine with any degree of certainty if the subject site has actually been impacted by the potential sources identified by this environmental assessment."

McLaren concluded that the cost to conduct such further investigation would be $50,-000—$80,000. McLaren also concluded that the condition of the property could require "remedial cleanup activities that could range in cost from $100,000 to an excess of $1,000,000." Boatmen's determined that at a foreclosure sale it would not bid on Tract I (the south tract).

Boatmen's proceeded by sending and publishing notice of a Trustee's sale in foreclosure of the Laclede County property to be held February 4, 1991. The sale was held. The Trustee offered the tracts separately and then as a unit. Dorco, a boat manufacturing company, submitted the highest and only bid for Tract I of $2,500. Tract I was sold and conveyed to Dorco for that amount. Dorco was owned by a director of Boatmen's. Dorco was in the boat manufacturing business. Boatmen's submitted the highest and only bid for Tract II of $124,436. The property was sold and conveyed to Boatmen's for that amount.

In December 1990, Boatmen's determined to foreclose on the Pulaski County property. Notice of a sale on a date in January, not shown by the record, was published. An unidentified error was discovered in that notice. Boatmen's then began publication of a new notice of sale for the date of February 5, 1991. The first notice of sale was not promptly withdrawn from publication. Both notices of sale appeared, side by side, in the January 10, 1991, edition of the *Richland Mirror.* The sale was held on February 5, 1991. Wilsons' daughter bid $1,000. Boatmen's bid $10,000. The property was sold and conveyed to Boatmen's for that price.

The findings of the trial court upon which its judgment was based include the following:

"6. The Court finds that there was no error in the sale of the Laclede County property under the terms of said Deed of Trust. The Court finds that there is no evidence of fraud or unfair dealing on the part of the Trustee; that said sale was published and notices given to the Defendants as provided by state law and that Defendant Vernon Wilson appeared at both sales. No evidence was presented to indicate that the Trustee or any purchaser at any sale had discouraged bidding. *Mueller v. Simmons* (App. 1982) 634 S.W.2d 533 and *Drannek Realty Co. v. Nathanial [Nathan] Frank, Inc.* (1940) 139 S.W.2d 926, 346 Mo. 187, and *Schwartz [Schwarz] v. Kellogg* (Sup. 1922) 243 S.W.2d [S.W.] 179.

7. The Court further finds that there was no error in either foreclosure. No evidence was presented by the Defendants indicating that any prospective bid-

der was confused as to the date and time or place of sale."

■ Wilsons' first two points by which they contend the trial court erred are as follows:

"The trial court erred in granting the deficiency judgment against appellants in that the Trustee, by virtue of his relationship with the respondent Bank, violated his fiduciary duty to the appellants with respect to each foreclosure sale by making decisions solely with respondent's best interests in mind and failing to take action to procure the best price possible."

"The trial court erred in granting the deficiency judgment against appellants in that the Trustee's actions of publicizing the Bank's decision not to bid on Tract 1 and of determining the Bank's bidding policy on foreclosure sales resulted in chilled bidding at each sale."

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." 84.04(d). The criteria by which the adequacy of a point relied on is judged is well established. *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978). Those criteria include the following:

"The requirements of Rule 84.04 are not only mandatory but they are an essential component to permit effective functioning of the appellate courts. *Draper v. Aronowitz*, 695 S.W.2d 923, 924 (Mo. App.1985). Any point relied on for appellate review of alleged error should definitely formulate and isolate the exact issues to be reviewed." *Biever v. Williams*, 755 S.W.2d 291, 293 (Mo.App. 1988).

The failure of Wilsons' two points to meet that standard is obvious. The general conclusory allegations of error in those points illustrate why their counterclaim or set-off has no merit.

■ Their argument is of the same ilk. It is replete with characterizations of the conduct of the Trustee and Boatmen's as inequitable and unfair. It is also sprinkled with misleading statements such as the following: "As for Tract 2 and the Pulaski County property, it was Murray's decision regarding the Bank's bidding policy that resulted in inadequate prices for those properties." In fact, Boatmen's policy to bid 80% of the appraised value of property subject to foreclosure was a general policy formulated by the board of directors of Boatmen's. It was not a policy dealing only with the Wilsons' property. Boatmen's was under no obligation to bid at all. Its policy could not be a breach of trust. It could only be considered as a possible benefit to mortgagors.

■ Nor can proof of any element of a defense to a deficiency judgment be supplied by unsupported assertions that the price at which the properties were sold were "outrageously low". The prices paid for the Pulaski property and for Tract II were 80% of the appraised value. As hereafter more fully discussed, when the environmental factor is considered, the price of $2,500 for Tract I may, to the buyer, prove to be high. The Wilsons presented no evidence of the value of the property at the time of the foreclosure sales. Cf. *Boatmen's Bank v. Community Interiors, Inc.*, 721 S.W.2d 72 (Mo.App.1986).

■ Wilsons' conclusory statements and argument seem to be founded on the proposition that an individual named as a trustee, in whatever capacity he acts, must make all decisions in regard to all matters touching or related to a secured debt for the benefit of the mortgagors-debtors. Wilsons' reliance upon this proposition is illustrated by their summary of why the trial court erred: "The prices were inadequate to cover the amounts due on the notes, and that factor along with the fact that Murray, as bank officer, made the decision on the Bank's bidding policy, and acting as trustee neglected to take any action to insure that the properties brought the best possible price, combine to constitute defenses to the deficiency judgment claims." By implication, the Wilsons assert the Trustee was under an affirmative duty to take further action to aid them. They cite no authority to establish this duty. Nor do they suggest what that ac-

tion might have been or how it would have aided the mortgagors. The status of a trustee under a deed of trust is summarized in the following terms:

"Initially we note that a trustee, exercising a power of sale under a deed of trust, is the agent of *both mortgagee and mortgagor* and should act with impartiality and integrity. *Judah v. Pitts,* 333 Mo. 301, 62 S.W.2d 715, 720 (1933). The law requires the trustee to exercise sound discretion and *to conduct the sale* in a manner which renders the 'sale most beneficial to the debtor at the best possible price.' *Roark v. Plaza Savings Association,* 570 S.W.2d 825, 829 (Mo.App. 1978). When fraud or unfair dealing surrounds a foreclosure sale, the remedy is to set aside the sale. *Smith v. Haley,* 314 S.W.2d 909, 915 (Mo.1958)." *Boatmen's Bank v. Community Interiors, Inc.,* 721 S.W.2d at 76. (Emphasis added.)

Also see *Roark v. Plaza Sav. Ass'n,* 570 S.W.2d 825 (Mo.App.1978).

■■■ The scope of the duties of a trustee under a customary deed of trust in the nature of a mortgage extends to the conduct of the sale. *Hoer v. Wurdack,* 766 S.W.2d 673 (Mo.App.1989). The fact a trustee is an employee of the mortgagee creates no infirmity in exercising a power of sale. *Judah v. Pitts,* 333 Mo. 301, 62 S.W.2d 715 (1933). That relationship does not restrict an individual named as trustee from participating in or making decisions concerning matters other than the conduct of the sale. Murray's trust duties were not breached when he followed the general policy of Boatmen's and ordered independent appraisals of the property to be foreclosed. Nor was the trust breached by the Trustee ordering a "Phrase I Environmental Assessment Report" concerning the possibility that Wilsons had created an environmental hazard on Tract I. Nor was the trust breached by the Trustee participating in a decision not to bid on Tract I on which a potential environmental hazard existed. Under the circumstances, that was a prudent decision. 42 U.S.C.S. §§ 9601–9659(h), *Hazardous Substances Releases, Liability, Compensation* (1989). In this connec-

tion, *United States v. Maryland Bank & Trust Co.,* 632 F.Supp. 573 (D.Md.1986), is required reading. It is significant that Vernon M. Wilson did not personally or otherwise offer evidence to minimize the possibility of the existence of an environmental hazard he had created. No trust was breached nor was Boatmen's guilty of inequitable conduct by Dorco's purchase of Tract I for $2,500. As stated, that purchase could prove to be costly. In determining the effect of a purchase by an officer, employee and director of a mortgagee it has been held:

"There was no evidence that the Wood & Huston Bank was a party to the purchase at the foreclosure sale, for itself or through Huston, or had any interest in the transaction. Nor was there any hint of fraud by anyone connected with the sale. *See Dickey v. Barnes,* 427 S.W.2d 732, 733 (Mo.App.1968)." *Jay v. Smith,* 806 S.W.2d 153, 155 (Mo.App.1991).

That is applicable to the purchase by Dorco.

Wilsons' reliance upon *Regional Investment Company v. Willis,* 572 S.W.2d 191 (Mo.App.1978), is misplaced. In that case, the mortgagee had, before the sale, entered into a contract to sell the described property for a price in excess of the amount the mortgagee successfully bid at the sale. Under those circumstances, the court held that the amount to be credited against the note was the prearranged sale price the mortgagee received for the property. In this case, Boatmen's received only $2,500 for Tract I and has no anticipation of receiving anything in excess of that amount. There is a dearth of evidence that Boatmen's may profit from its purchase of Tract II and the Pulaski County property.

■■ Wilsons' third point is:

"The trial court erred in granting the deficiency judgment with respect to the second note, because publication of the notice of Trustee's sale was confusing as to the date of the sale and therefore invalid."

That point on its face has no merit. If the sale of the Pulaski County property were in

fact invalid, Wilsons may, in a proper action recover that property. That asserted invalidity does not establish the trial court erred in entering a deficiency judgment. The third point is denied. The trial court's finding that there was no impropriety in the conduct of the sales is supported by the evidence and the judgment is affirmed.

SHRUM, P.J., and MONTGOMERY, J., concur.